724 F.2d 68
 TRACE X CHEMICAL, INC., a corporation, Appellee,
v.
GULF OIL CHEMICAL COMPANY and Gulf Oil Corporation, Appellees,
v.
C.I.L., INC.; Canadian Industries, Limited; and C.I.L.
Ammunition, Inc., Appellants.
TRACE X CHEMICAL, INC., a corporation,
v.
GULF OIL CHEMICAL COMPANY and Gulf Oil Corporation, Appellants,
v.
C.I.L., INC.; Canadian Industries, Limited; and C.I.L.
Ammunition, Inc., Appellees.
 Nos. 83-1072, 83-1184.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 17, 1983.
Decided Dec. 20, 1983.
 
 Roger P. Balog, Houston, Tex., for third party plaintiffs-appellees, cross appellants.
 William H. Sutton, Michael G. Smith, Friday, Eldridge & Clark, Little Rock, Ark., Bartlett H. McGuire, Michael Mills, Davis, Polk & Wardwell, New York City, for defendants-appellants.
 David Newbern, Fayetteville, Ark., for plaintiff-appellee.
 Before HEANEY and McMILLIAN, Circuit Judges, and COLLINSON,* Senior District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 In August of 1976, Trace X Chemical, Inc., received shipments of trinitroluene (TNT) for use in the manufacture of cast primers employed by the mining industry. The TNT later proved defective. On January 26, 1978, Trace X filed a complaint in the United States District Court for the Western District of Arkansas against Gulf Oil Chemicals Company and Gulf Oil Corporation. Trace X alleged, inter alia, that Gulf breached various express and implied warranties in its sale of the TNT to Trace X. Gulf denied liability and counterclaimed, inter alia, for $56,143 because of Trace X's breach of a bailment contract and $38,110 because of Trace X's delivery of defective cast primers to Gulf.
 
 
 2
 By letter dated June 20, 1980, Gulf notified its supplier--C.I.L., Inc., Canadian Industries, Ltd., and C.I.L. Ammunition, Inc. (CIL, collectively)--of the pendency of the litigation and requested that CIL defend against the claims of Trace X. CIL refused to defend the action. On July 18, 1980, Gulf filed a third party complaint against CIL alleging that CIL was primarily liable for any damages to Trace X. Anticipating jurisdictional problems in Arkansas, Gulf filed a similar complaint against CIL in the United States District Court for the Northern District of New York on August 6, 1980. The Arkansas district court dismissed Gulf's third party complaint for lack of personal jurisdiction over CIL on March 5, 1981.
 
 
 3
 During the discovery phase of the Arkansas case, Trace X learned that CIL had supplied the defective TNT to it directly, rather than through Gulf. On March 12, 1981, Trace X amended its complaint to name CIL as a defendant. On August 4, 1981, the district court granted the amendment, recognizing personal jurisdiction over CIL by virtue of its business contacts with Arkansas after 1977. On November 23, 1981, the district court granted a consent judgment for Gulf against Trace X on the latter's claims and on Gulf's counterclaims for $94,253. It realigned Gulf as a plaintiff against CIL for the remainder of the action. The New York action by Gulf against CIL was later consolidated with the Arkansas case.
 
 
 4
 The action then went to trial before a jury in October of 1982. During trial, Gulf and CIL entered into a written stipulation that, should CIL be found to have a net liability to Trace X, the court should enter judgment in favor of Gulf for $38,110.[1] Gulf and CIL also entered into an oral stipulation on the record regarding the amount of Gulf's legal expenses up to the time of Trace X's amended complaint of March 12, 1981, including the legal expenses necessary to file the separate lawsuit in New York. The total of these legal expenses was $34,500.09. Gulf claimed that CIL should bear these expenses on a theory of indemnity implied at law between CIL, as manufacturer of the defective TNT, and Gulf, as "retailer" of the explosives.
 
 
 5
 On October 28, 1982, the jury found for Trace X against CIL. On December 2, 1982, the district court issued a post trial order denying CIL's earlier motion for a directed verdict based on the applicable statute of limitations. The court held that, under Fed.R.Civ.P. 15(c), Trace X's amended complaint of March 12, 1981, related back to the date of its January 26, 1978, complaint, which Trace X filed well within the four-year statute of limitations for actions sounding in contract under Ark.Stat.Ann. Sec. 85-2-725 (1961). On December 5, 1982, the court entered judgment for Trace X against CIL, awarded Gulf the $38,110 agreed to in its stipulation with CIL, and dismissed with prejudice Gulf's claim for implied indemnity against CIL.
 
 
 6
 CIL appeals from the December 2, 1982, order allowing Trace X's amended complaint to relate back under Rule 15(c). We affirm the district court's finding that the factual prerequisites to Rule 15(c) were present in this case and find no abuse of discretion in its application of the rule. See Russ v. Ratliff, 578 F.2d 221, 224 (8th Cir.), cert. denied, 439 U.S. 1003, 99 S.Ct. 614, 58 L.Ed.2d 679 (1978). Rule 15(c) allows relation back of an amended complaint to include a defendant not previously named if (1) the claim asserted in the amended complaint "arose out of the conduct, transaction, or occurrence set forth * * * in the original pleading;" (2) the new defendant "has received such notice of the institution of the action [prior to the running of the applicable statute of limitations] that he will not be prejudiced in maintaining his defense on the merits;" and (3) the new defendant "knew or should have known [prior to the running of the applicable statute of limitations] that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Fed.R.Civ.P. 15(c). See McCurry v. Allen, 688 F.2d 581, 584-585 (8th Cir.1982). The present appeal presents no dispute as to the "same transaction" or "notice" elements of the rule, nor as to the lack of prejudice to CIL in forcing it to go to trial on the merits below. CIL argues, however, that Trace X made no "mistake concerning the identity of the proper party" and that CIL had no reason to know that Trace X would have brought the action against it had Trace X known all the facts of the TNT sale in question. We disagree with CIL on both counts.
 
 
 7
 The evidence established that Trace X assumed Gulf was in the chain of title to the defective TNT, and therefore liable to suit for a breach of warranty, because of a billing error by CIL. This assumption proved to be wrong, as is reflected in the November 23, 1981, consent judgment for Gulf against Trace X. We cannot find as a matter of law that the district court erred in classifying this mistaken assumption as a "mistake concerning the identity of the proper party" under Rule 15(c). Gulf was obviously not the proper party to take responsibility for the defective TNT. In addition, we cannot say that the court clearly erred in finding that CIL knew, or should have known, that Trace X would have filed suit against it had Trace X known of the billing error at the time it filed the present action. CIL should have discovered its billing error and realized that Trace X had sued the wrong party by June of 1980, when Gulf sent it notice of Trace X's suit.
 
 
 8
 Gulf cross-appeals from the December 5, 1982, dismissal of its claim for indemnity and asserts that it is entitled to the $38,110 verdict because of CIL's breach of warranty regardless of our disposition of CIL's appeal from the underlying award to Trace X. We affirm the district court's holding that Arkansas courts would not allow Gulf's claim for indemnity as to its legal expenses under the facts of this case. The district court recognized that, where the plaintiff recovers on a warranty claim, "there is a right of indemnity [by] a middleman against the supplier for the loss itself." Tr. at 274. In addition, Arkansas courts have allowed indemnity claims for attorneys' fees where an express indemnity agreement was broad enough to include such fees, United States Fidelity & Guaranty Co. v. Love, 260 Ark. 374, 538 S.W.2d 558, 558-559 (1976), or where the indemnitor did not challenge the request for such fees, Buck v. Monsanto Co., 254 Ark. 821, 497 S.W.2d 664, 665-666 (1973); see also United States Fidelity & Guaranty Co. v. Love, supra, 538 S.W.2d at 559. Gulf cited no Arkansas case, however, in which a manufacturer has been held liable on a theory of implied indemnity for the legal expenses of a successor supplier in defending warranty claims for the delivery of defective products.
 
 
 9
 The district court decided that the Arkansas courts would not allow an implied indemnity claim for Gulf's attorneys' fees, especially since Gulf in fact was not in the chain of title to the defective TNT and pursued successful counterclaims in the course of its defense. The court stated, "It is just like anybody who is being sued by mistake. They aren't entitled to recover against the party which rightfully should have been sued. * * * Furthermore, Gulf's posture in this case has not been that of simply a passive middleman. Gulf actively pursued claims against Trace X." Tr. at 276. Although the trial court's interpretation of state law is not binding on this Court, we give great weight to that interpretation. Zrust v. Spencer Foods, Inc., 667 F.2d 760, 764 (8th Cir.1982). On the facts of this case, we are not firmly convinced that the district court erred in interpreting Arkansas law on the issue of implied indemnity for legal expenses.
 
 
 10
 Gulf and CIL had no express agreement that CIL would indemnify Gulf for legal expenses incurred in defending claims involving CIL explosives, and the court absolved Gulf of any liability to Trace X. Moreover, the oral stipulation of legal expenses entered at trial is unclear as to how, or whether, Gulf segregated the legal expenses involved in its breach of contract and warranty counterclaims against Trace X, which resulted in a $94,253 compensatory award to Gulf. Furthermore, Gulf's indemnity claim for $34,500.09 included expenses for legal work done prior to Gulf's "tender of the defense" to CIL on June 20, 1980, and expenses incurred in filing Gulf's separate complaint against CIL in New York. See United States Fidelity & Guaranty Co. v. Love, supra, 538 S.W.2d at 559 (attorneys' fees expended by an indemnitee in an action to enforce the indemnity contract are not recoverable). Finally, Gulf clearly was not in the chain of title to the explosives ultimately found defective, which amounted to a complete defense for Gulf in no way related to CIL's ultimate liability as manufacturer of the defective TNT.
 
 
 11
 With regard to Gulf's claim that it was entitled to the $38,110 verdict regardless of any recovery by Trace X, we find it unnecessary to reach this issue because we have upheld the award to Trace X.
 
 
 12
 For the reasons discussed above and set forth by the district court, we affirm its orders and judgment as to all parties.
 
 
 
 *
 The Honorable William R. Collinson, Senior District Judge for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 This amount was apparently still owing Gulf by Trace X from the portion of the consent judgment awarding Gulf its counterclaim for $38,110 based on Trace X's delivery of defective cast primers