# SCHIAVONE ET AL. *v.* FORTUNE, AKA TIME, INC.

No. 84–1839.   Argued February 26, 1986—Decided June 18, 1986

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BURGER, C. J., and WHITE, J., joined, *post*, p. 32.

*Morris M. Schnitzer* argued the cause for petitioners. With him on the briefs were *Theodore W. Geiser* and *Thomas S. Cosma.*

*Peter G. Banta* argued the cause and filed a brief for respondent.

JUSTICE BLACKMUN delivered the opinion of the Court.

This case primarily concerns Rule 15(c) of the Federal Rules of Civil Procedure and its application to a less-than-precise denomination of a defendant in complaints filed in federal court near the expiration of the period of limitations. Because of an apparent conflict among the Courts of Appeals,[1] we granted certiorari. 474 U. S. 814 (1985).

## I

The three petitioners instituted this diversity litigation on May 9, 1983, by filing their respective complaints in the United States District Court for the District of New Jersey. Each complaint alleged that the plaintiff was libeled in a cover story entitled "The Charges Against Reagan's Labor Secretary," which appeared in the May 31, 1982, issue of Fortune magazine. The caption of each complaint named

---

[1] Compare, *e. g., Cooper* v. *U. S. Postal Service,* 740 F. 2d 714, 716 (CA9 1984), cert. denied, 471 U. S. 1022 (1985); *Watson* v. *Unipress, Inc.,* 733 F. 2d 1386, 1390 (CA10 1984); *Hughes* v. *United States,* 701 F. 2d 56, 58 (CA7 1982); and *Trace X Chemical, Inc.* v. *Gulf Oil Chemical Co.,* 724 F. 2d 68, 70–71 (CA8 1983), with *Kirk* v. *Cronvich,* 629 F. 2d 404, 408 (CA5 1980); *Ingram* v. *Kumar,* 585 F. 2d 566, 571–572 (CA2 1978), cert. denied, 440 U. S. 940 (1979); and *Ringrose* v. *Engelberg Huller Co.,* 692 F. 2d 403, 410 (CA6 1982) (concurring opinion).

"Fortune," without embellishment, as the defendant. See App. 8a. In its paragraph 2, each complaint described Fortune as "a foreign corporation having its principal offices at Time and Life Building, Sixth Avenue and 50th Street, New York, New York 10020." *Id.*, at 9a. "Fortune," however, is only a trademark and the name of an internal division of Time, Incorporated (Time), a New York corporation.[2]

On May 20, petitioners' counsel mailed the complaints to Time's registered agent in New Jersey. They were received on May 23. The agent refused service because Time was not named as a defendant.

On July 18, 1983, each petitioner amended his complaint to name as the captioned defendant "Fortune, also known as Time, Incorporated," and, in the body of the complaint, to refer to "Fortune, also known as Time, Incorporated," as a New York corporation with a specified registered New Jersey agent. See *id.*, at 25a, 26a. The amended complaints were served on Time by certified mail on July 21.

Time moved to dismiss the amended complaints. The District Court granted those motions. *Id.*, at 96a, 98a, 100a. It ruled that the complaints, as amended, adequately named Time as a defendant, and therefore were not to be dismissed "for failure of capacity of defendant to be sued." Supp. App. to Pet. for Cert. 18a. Under New Jersey law, however, see N. J. Stat. Ann. 2A:14–3 (West 1952), a libel action must be commenced within one year of the publication of the alleged libel.[3] Supp. App. to Pet. for Cert. 18a. State law also provides that the " 'date upon which a substantial distribution occurs triggers the statute of limitations for any and all actions arising out of that publication,' " *id.*, at 19a, quoting *MacDonald* v. *Time, Inc.*, Civil No. 81–479 (DNJ Aug. 25,

---

[2] No claim is made that Fortune is a separate legal entity with the capacity to be sued. ·

[3] The cited New Jersey statute reads:

"Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander."

24

1981). Supp. App. to Pet. for Cert. 19a.[4] The court found it unnecessary, for purposes of the motion, to determine the precise date the statute of limitations had begun to run.

Although Time acknowledged that the original filings were within the limitations period, it took the position that it could not be named as a party after the period had expired. Time contended that a party must be substituted within the limitations period in order for the amendment to relate back to the original filing date pursuant to Rule 15(c).[5]

The District Court concluded that the amendments to the complaints did not relate back to the filing of the original complaints because it had not been shown that Time received notice of the institution of the suits within the period provided by law for commencing an action against it. Supp. App. to Pet. for Cert. 23a. It therefore "with great reluctance" granted the motion to dismiss, noting that any dismissal of a claim based upon the statute of limitations "by its very nature is arbitrary." *Id.*, at 24a. The court also ruled that the "equities of this situation" did not demand that relief

---

[4] The court noted that, despite the magazine's cover date of May 31, 1982, the record "indicate[d]" that, for purposes of determining the limitations period, publication "occurred substantially before" May 31; that subscription copies were mailed May 12 and received by subscribers May 13–19; that newsstand copies went on sale May 17; that a press release was issued May 11; and that copies of the magazine were mailed to representatives of the press on that date. Supp. App. to Pet. for Cert. 19a.

[5] Rule 15(c) provides in pertinent part:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

be afforded to petitioners. *Ibid.* The identity of the publisher of Fortune was readily ascertainable from the magazine itself. It rejected petitioners' contention that Time deliberately misled them to believe that Fortune was a separate corporation. It observed that petitioners created the risk by filing their suits close to the end of the limitations period. *Id.*, at 25a.

Petitioners moved for reconsideration. By letter opinion filed January 12, 1984, the court adhered to its prior ruling. App. to Brief in Opposition 1a.

On appeal to the United States Court of Appeals for the Third Circuit, the three actions were consolidated. That court affirmed the orders of the District Court. 750 F. 2d 15 (1984). It ruled that the New Jersey statute of limitations ran "on May 19, 1983, at the latest," for a "substantial distribution" of the issue of May 31, 1982, had "occurred on May 19, 1982, at the latest." *Id.*, at 16. It regarded the language of Rule 15(c) as "clear and unequivocal." 750 F. 2d, at 18. It also said: "While we are sympathetic to plaintiffs' arguments, we agree with the defendant that it is not this court's role to amend procedural rules in accordance with our own policy preferences." *Ibid.* It further held that the period within which the defendant to be brought in must receive notice under Rule 15(c) does not include the time available for service of process.

## II

It is clear, from what has been noted above, that the three complaints as originally drawn were filed within the limitations period; that service was attempted only after that period had expired; and that the amendment of the complaints, and the service of the complaints as so amended, also necessarily took place after the expiration of the limitations period. The District Court and the Court of Appeals so found, and we have no reason to disagree. The parties themselves do not dispute these facts. Instead, their dispute centers on

whether Time was sufficiently named as the defendant in the original complaints so that the service that was attempted after the 1-year period but within the time allowed for service was effective, and on whether, in any event, the amendment of the complaints related back to the original filing and accomplished the same result.

Petitioners argue that Rule 15(c)'s present form came into being by amendment in 1966 for the express purpose of allowing relation back of a change in the name or identity of a defendant when, although the limitations period for filing had run, the period allowed by Rule 4 for timely service had not yet expired. Brief for Petitioners 5. The Rule was effected, it is said, to ameliorate literal and rigid application of limitations periods to both claim and party amendments. It is urged that the Rules of Civil Procedure should be applied and construed to yield just determinations, that is, determinations on the merits, and that a procedural "double standard" that bars relation back for late notice to a new defendant when a like notice to the original defendant would be timely is unacceptable. Petitioners further argue that the original party named here and the party sought to be substituted had such commonality of interest that notice to one was in fact notice to the other. Therefore, it is said, where the intended defendant was misdesignated in form only, and knew or reasonably should have known that it was the true target and received the same notice it would have received had the form been flawless, "relation back should be a foregone conclusion." Brief for Petitioners 6.

Respondent, of course, takes issue with this approach. It claims that the language of Rule 15(c) is clear and that proper notice of the institution of these actions was not received by it within the period of limitations. It asserts that the equities do not support petitioners' position, and that the interpretation of Rule 15(c) urged by petitioners in effect would be an impermissible rewriting of the Rule by this Court.

## III

As amended, Rule 1 of the Federal Rules of Civil Procedure states: "These rules . . . shall be construed to secure the just, speedy, and inexpensive determination of every action." Rule 8(f) says: "All pleadings shall be so construed as to do substantial justice." And Justice Black reminded us, more than 30 years ago, in connection with an order adopting revised Rules of this Court, that the "principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts." 346 U. S. 945, 946 (1954).

This Court, too, in the early days of the federal civil procedure rules, when Rule 15(c), see n. 5, *supra*, consisted only of what is now its first sentence, announced that the spirit and inclination of the rules favored decisions on the merits, and rejected an approach that pleading is a game of skill in which one misstep may be decisive. *Conley* v. *Gibson*, 355 U. S. 41, 48 (1957). It also said that decisions on the merits are not to be avoided on the basis of "mere technicalities." *Foman* v. *Davis*, 371 U. S. 178, 181 (1962).

Despite these worthy goals and loftily stated purposes, we conclude that the judgments of the Court of Appeals in the present cases were correct.

### A

The defendant named in the caption of each of the original complaints was "Fortune," and Fortune was described in the body of the complaint as "a foreign corporation" having principal offices in the Time and Life Building in New York City. It also was alleged that Fortune was engaged in the publication of a magazine of that name. Attached to the complaint were a copy of the magazine's cover for its issue of May 31, 1982, an artist's depiction of an alleged payoff, and the text of parts of the article about which petitioners complained. The focus, as pleaded, was on Fortune.

We cannot understand why, in litigation of this asserted magnitude, Time was not named specifically as the defendant in the caption and in the body of each complaint. This was not a situation where the ascertainment of the defendant's identity was difficult for the plaintiffs. An examination of the magazine's masthead clearly would have revealed the corporate entity responsible for the publication.[6]

Petitioners nonetheless rely on Fortune's status as a division of Time to argue that institution of an action purportedly against the former constituted notice of the action to the latter, as a related entity. Some Courts of Appeals have recognized an "identity-of-interest" exception under which an amendment that substitutes a party in a complaint after the limitations period has expired will relate back to the date of the filing of the original complaint.[7] The Court of Appeals in this case rejected that approach. The object of the exception is to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added.

---

[6] The magazine's very issue in question, that of May 31, 1982, p. 2, recites:

"FORTUNE (ISSN 0015–8259), May 31, 1982, Vol. 105, No. 11. Issued biweekly by Time Inc., 3435 Wilshire Blvd., Los Angeles, Cal. 90010. . . . Principal offices: Time & Life Building, Rockefeller Center, New York, N. Y. 10020. . . . FORTUNE is a registered mark of Time Incorporated."

The parallel information set forth in current issues of Fortune magazine reads:

"FORTUNE (ISSN 0015–8259). Published biweekly, with three issues in October, by Time Inc., 10880 Wilshire Blvd., Los Angeles, CA 90024–4193. Time Inc. principal office: Time & Life Building, Rockefeller Center, New York, NY 10020–1393. . . . FORTUNE is a registered mark of Time Inc."

See issue of June 9, 1986, p. 2; issue of May 26, 1986, p. 4; issue of May 12, 1986, p. 4.

[7] See, *e. g.*, *Travelers Indemnity Co.* v. *United States ex rel. Construction Specialties Co.*, 382 F. 2d 103 (CA10 1967); *Montalvo* v. *Tower Life Building*, 426 F. 2d 1135 (CA5 1970); *Korn* v. *Royal Caribbean Cruise Line, Inc.*, 724 F. 2d 1397 (CA9 1984).

Even if we were to adopt the identity-of-interest exception, and even if Fortune properly could be named as a defendant, we would be compelled to reject petitioners' contention that the facts of this case fall within the exception. Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party. In this case, however, neither Fortune nor Time received notice of the filing until after the period of limitations had run. Thus, there was no proper notice to Fortune that could be imputed to Time. See *Hernandez Jimenez* v. *Calero Toledo*, 604 F. 2d 99, 102–103 (CA1 1979); *Norton* v. *International Harvester Co.*, 627 F. 2d 18, 20–21 (CA7 1980).

## B

The complaints as they were amended, of course, meet the identification standard. While the statement, "Fortune, also known as Time, Incorporated, was and is a corporation of the state of New York," is not a model of accuracy, it does focus on Time and sufficiently describes Time as the targeted defendant. The next question, then, is whether the amendment, made in July 1983, related back to the filing on May 9, a date concededly within the period of the applicable New Jersey statute of limitations.

Central to the resolution of this issue is the language of Rule 15(c). See n. 5, *supra*. Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period. We are not concerned here with the first

factor, but we are concerned with the satisfaction of the remaining three.

The first intimation that Time had of the institution and maintenance of the three suits took place after May 19, 1983, the date the Court of Appeals said the statute ran "at the latest." 750 F. 2d, at 16. Only on May 20 did petitioners' counsel mail the complaints to Time's registered agent in New Jersey. Only on May 23 were those complaints received by the registered agent, and then refused. Only on July 19 did each petitioner amend his complaint. And only on July 21 were the amended complaints served on Time.

It seems to us inevitably to follow that notice to Time and the necessary knowledge did not come into being "within the period provided by law for commencing the action against" Time, as is so clearly required by Rule 15(c). That occurred only after the expiration of the applicable 1-year period. This is fatal, then, to petitioners' litigation.

We do not have before us a choice between a "liberal" approach toward Rule 15(c), on the one hand, and a "technical" interpretation of the Rule, on the other hand. The choice, instead, is between recognizing or ignoring what the Rule provides in plain language. We accept the Rule as meaning what it says.

We are not inclined, either, to temper the plain meaning of the language by engrafting upon it an extension of the limitations period equal to the asserted reasonable time, inferred from Rule 4, for the service of a timely filed complaint. Rule 4 deals only with process. Rule 3 concerns the "commencement" of a civil action. Under Rule 15(c), the emphasis is upon "the period provided by law for commencing the action against" the defendant. An action is commenced by the filing of a complaint and, so far as Time is concerned, no complaint against it was filed on or prior to May 19, 1983.

Any possible doubt about this should have been dispelled 20 years ago by the Advisory Committee's 1966 Note about Rule 15(c). The Note specifically states that the Rule's

phrase "within the period provided by law for commencing the action" means "within the applicable limitations period":

> "An amendment changing the party against whom a claim is asserted relates back if the amendment satisfies the usual condition of Rule 15(c) of 'arising out of the conduct . . . set forth . . . in the original pleading,' and if, *within the applicable limitations period*, the party brought in by amendment, first, received such notice of the institution of the action—the notice need not be formal—that he would not be prejudiced in defending the action, and, second, knew or should have known that the action would have been brought against him initially had there not been a mistake concerning the identity of the proper party" (emphasis supplied). Advisory Committee's Notes on Fed. Rule Civ. Proc. 15, 28 U. S. C. App., p. 551; 39 F. R. D. 83.

Although the Advisory Committee's comments do not foreclose judicial consideration of the Rule's validity and meaning, the construction given by the Committee is "of weight." *Mississippi Publishing Corp.* v. *Murphree*, 326 U. S. 438, 444 (1946).

The commentators have accepted the literal meaning of the significant phrase in Rule 15(c) and have agreed with the Advisory Committee's Note. See 3 J. Moore, Federal Practice § 15.15[4.–2], p. 15–225 (2d ed. 1985) ("the Rule demands a showing that, within the period of limitations, the new party . . ."); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1498, p. 250 (Supp. 1986) ("in order for an amendment adding a party to relate back under Rule 15(c) the party to be added must have received notice of the action before the statute of limitations has run").

The linchpin is notice, and notice within the limitations period. Of course, there is an element of arbitrariness here, but that is a characteristic of any limitations period. And it is an arbitrariness imposed by the legislature and not by the judicial process. See Note: Federal Rule of Civil Procedure

15(c): Relation Back of Amendments, 57 Minn. L. Rev. 83, 85, n. 8 (1972).[8]

The judgments of the Court of Appeals are affirmed.

*It is so ordered.*

JUSTICE STEVENS, with whom THE CHIEF JUSTICE and JUSTICE WHITE join, dissenting.

Certain principles are undisputed. If petitioners had filed their suits alleging that Fortune magazine libeled them on precisely the same date; had added the magic words "also known as Time, Incorporated" to the word "Fortune"; and had done everthing else exactly the same, petitioners would be entitled to proceed with their legal actions. Because petitioners committed the "fatal" error, *ante*, at 30, of identifying the defendant by its name of publication rather than its name of incorporation, however, the Court finds that they fell through a trapdoor—despite the fact that the magazine publisher's agent contemporaneously noted his understanding that the suits were directed against the magazine publisher (Time, Incorporated) fully as much as if petitioners had included the magic words.

In my view, the Court's decision represents an aberrational—and, let us hope, isolated—return to the "sporting

---

[8] Petitioners would garner support from Professor Clark Byse's article, Suing the "Wrong" Defendant in Judicial Review of Federal Administrative Action: Proposals for Reform, 77 Harv. L. Rev. 40 (1963), cited in the Advisory Committee's Note to the 1966 amendment of Rule 15, 28 U. S. C. App., p. 550; 39 F. R. D. 83. That study was critically directed at four Federal District Court decisions concerning "relation back" in suits against Government officers. In each of the cases, however, the Government within the period of limitations was on notice of the claim.

Similarly, petitioners' reliance upon JUSTICE WHITE's footnote comment in dissent from the denial of certiorari in *Cooper* v. *United States Postal Service*, 471 U. S. 1022, 1025, n. 3 (1985), seems to us to be misplaced. JUSTICE WHITE, in fact, noted the inherent weakness of any such reliance ("Petitioner's position is somewhat weak in this regard because, while the complaint was filed within the requisite 30 days, no party was served with process within that period").

theory of justice" condemned by Roscoe Pound 80 years ago.[1] The Court's result is supported neither by the language nor purposes of the Federal Rules, or of Rule 15(c) in particular.

## I

Before examining the language and the history of Rule 15(c), a preliminary comment on the facts is appropriate. In its May 31, 1982, issue, Fortune published the article in dispute. On May 9, 1983, petitioners filed their complaints. Since the New Jersey 1-year statute of limitations made it necessary to have the complaints filed by May 19, 1983, it is clear that the original complaints were filed 10 days ahead of that deadline.

Rule 4(j) of the Federal Rules of Civil Procedure also required that service of the summons and complaints be made within 120 days of the original filing—in other words, by September 6, 1983.[2] The summons and the original complaints were mailed to Time, Incorporated's registered agent on May 20, 1983, and received on May 23, 1983—well within the 120-day deadline imposed by the Rule.

The caption of the original complaints identified the defendant only as "Fortune." The description of the defendant in paragraph 2 of those complaints further explained that petitioners intended to sue "a foreign corporation having its principal offices at Time and Life Building, Sixth Avenue and 50th Street, New York, New York 10020 engaged in the publication of a magazine called 'Fortune' which is distributed

---

[1] See Pound, The Causes of Popular Dissatisfaction with the Administration of Justice, 29 American Bar Assn. Reports 395, 404–405 (1906).

[2] Rule 4(j) states in its entirety:

"If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule."

throughout the world." App. 9a. There is no, and has never been any, suggestion that the caption confused or misled any agent of the defendant. Indeed, on the day that he received the summons and complaints, Time, Incorporated's agent forwarded them to Time, Incorporated's law department with a cover letter that stated:

> "Remarks: Discrepancy in corporate title noted. Letter from atty. indicates papers are for Time, Incorporated as publisher of Fortune. Service was made by mail pursuant to Rule 4(c) of the Federal Rules of Civil Procedure." *Id.*, at 35a.

On July 18, 1983—well in advance of the September 6 deadline for service of process—petitioners filed an amendment to the complaints and redesignated "Fortune" as "Fortune, also known as Time, Incorporated." *Id.*, at 25a–26a. Again, there is no suggestion that this redesignation did cause, or could have caused, Time, Incorporated, any prejudice in maintaining its defense on the merits of the case. Nor is there any suggestion that Time, Incorporated, would have received better notice, or earlier notice, of the institution of the action if the magic words had been added to the initial complaints. The only question is whether Rule 15(c) should be construed to render petitioners' complaints untimely even though they were filed within the statute of limitations and even though Time, Incorporated, clearly had adequate notice of the timely filed complaints.

## II

The majority relies exclusively on the "plain language" of Rule 15(c).[3] Far from compelling the majority's anomalous

---

[3] Rule 15(c) provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him,

result, the plain language of Rule 15(c) requires recognizing that there was no material difference between the notice given to Time, Incorporated, in the original complaints — from which Time, Incorporated, and its agent clearly understood that Time, Incorporated, was the intended defendant — and the notice that the Court concludes would have been adequate — in which petitioners would have appended "also known as Time, Incorporated" to the word "Fortune."

According to the majority, petitioners' complaints are barred because they did not satisfy a four-pronged test articulated in Rule 15(c). *Ante*, at 29–30. The majority ignores, however, a rather critical antecedent point. The four-pronged test is utterly irrelevant unless the amendment is one "changing the party against whom a claim is asserted." In this case, the technical correction filed in July added absolutely nothing to any party's understanding of "the party against whom" the claims were asserted — not to the plaintiffs' understanding, of course, and certainly not to Time, Incorporated's understanding, as its agent's letter in May made clear.

The plain language of Rule 15(c) discloses an obvious purpose to protect parties who are not named in the original complaint from prejudice that may arise when they are subsequently "brought in by amendment." If an original complaint names Smith as the tort-feasor and the plaintiff does not decide to sue Jones until after the statute of limitations has run, there would be obvious prejudice in allowing "an

---

the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

"The delivery or mailing of process to the United States Attorney, or his designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant."

amendment changing the party against whom a claim is asserted" unless Jones had actual notice of the claim before the statute ran. There is also a risk of prejudice whenever the identification of the defendant is so inaccurate or ambiguous that a reading of the complaint itself would not enable the defendant himself to realize that he was the party being sued.

The misdescription in this case, however, is not remotely of the kind that the Rule's "plain language" addresses. By any standard of fair notice, the difference between the description of the publisher of Fortune in the original complaints and the description of the publisher of Fortune in the amended complaints is no more significant than a misspelling, or perhaps a reference to "Time, Inc." instead of "Time, Incorporated."

In short, I would not construe this amendment as one "changing the party" against whom petitioners' claims are asserted. Although the words "Time, Incorporated" were first added to the complaints by the amendment, that entity cannot, in my judgment, fairly be described as a party "brought in by amendment" within the meaning of Rule 15(c).

### III

Even if I agreed that the change in designation from "Fortune" to "Fortune also known as Time, Incorporated" brought in a new party, and even if I were willing to disregard the undisputed evidence of the Time, Incorporated agent's contemporaneous understanding of the unadorned "Fortune" designation, I would still find the majority's "plain language" analysis unpersuasive.

The heart of the majority's analysis is that petitioners failed to satisfy the fourth factor of the test it discerns in Rule 15(c)—that "the second and third requirements must have been fulfilled within the prescribed limitations period." *Ante*, at 29. The majority thus finds petitioners' "fatal" mistake in the failure to amend within the statute of limitations period.

The language in the Rule imposing the deadline for amendments that relate back does not, however, refer to the statute of limitations. Rather, it describes "the period provided by law for commencing the action *against him*" (emphasis added). As I have noted, that period includes two components, the time for commencing the action by the filing of a complaint and the time in which the action "against him" must be implemented by the service of process. If the party is sufficiently described in the original complaint to avoid any possibility of prejudice to the defendant, I see no reason for not construing the Rule to embrace both components of the period provided by law for bringing a timely action against a particular defendant.[4]

---

[4] The majority seeks to bolster its "plain language" analysis with the Advisory Committee's reference to "the applicable limitations period." *Ante*, at 31. In my view, this statement begs, rather than settles, the question. I also agree with Judge Feinberg's analysis:

"Although on its face the phrase, 'within the period provided by law for commencing the action against him,' seems to mean the applicable statute of limitations period, such a literal interpretation is unjustified in jurisdictions where timely service of process can be effected after the statute of limitations has run. In those jurisdictions, even an accurately named defendant may not receive actual notice of the action against him prior to the running of the statute of limitations. Yet there is no doubt that the action against him is timely commenced. There is no reason why a misnamed defendant is entitled to earlier notice than he would have received had the complaint named him correctly. Calling the problem raised here a 'curious but minor difficulty of interpretation . . . over the language of the rule referring to the limitations period,' Professor (now Justice) Benjamin Kaplan, reporter for the Advisory Committee on Civil Rules, implicitly criticized a district court decision refusing relation back on facts somewhat similar to these. Kaplan, [Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 410, and n. 204 (1967)]. Professor Kaplan noted the anomaly of dismissing an action, which 'against the original defendant . . . would be considered timely brought despite the delayed service.' . . .

". . . We hold that under Rule 15(c) the period within which 'the party to be brought in' must receive notice of the action includes the reasonable

This construction is confirmed by a reference to the content of the notice requirement — what the majority labels the second prong of the four-part test.  *Ante*, at 29.  The Rule requires that the party affected by the amendment must have "received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits."  This language surely indicates that if the notice that the defendant actually receives is just as timely and just as informative as that which would have been received if no mistake had occurred, the purpose of the requirement has been satisfied.  In this case, Time, Incorporated would have known nothing different on May 23, 1983, if the complaints sent to its agent referred to "Fortune, also known as Time, Incorporated" than it knew from the complaints as sent, with their reference to "Fortune."  Respondent has not even contended otherwise.  Yet, for the Court, the first complaints would have been completely timely, and the second are completely barred.

## IV

That the majority's reading of the "plain language" leads to bizarre results is not altogether surprising.  For the majority, relying so heavily on what it views as the clarity of the language before it, ignores the mission and history of Rule 15(c).

The principal purpose of Rule 15(c) is to enable a plaintiff to correct a pleading error after the statute of limitations has run if the correction will not prejudice his adversary in any way.  That purpose is defeated — and the Rule becomes largely superfluous — if it is construed to require the correction to be made before the statute has run.  Moreover,

time allowed under the federal rules for service of process."  *Ingram* v. *Kumar*, 585 F. 2d 566, 571–572 (CA2 1978), cert. denied, 440 U. S. 940 (1979) (footnotes omitted).

It is curious that the majority, in relying on the Advisory Committee interpretation, ignores the reporter's almost contemporaneous understanding.

the specific liberalizing purpose of the 1966 amendment to the Rule is frustrated if the added language is construed to cut back on the number of cases in which relation back is permitted.

Prior to 1966, Rule 15(c) had included only the first sentence of the present Rule. In that form, the Rule had frequently been construed to allow relation back when there was a minor change in the designation of a party. See *Shapiro* v. *Paramount Film Distributing Corp.*, 274 F. 2d 743 (CA3 1960); 3 J. Moore, Federal Practice § 15–15[4.–1], p. 15–211 (2d ed. 1985). A group of contrary cases in which the plaintiffs had mistakenly sued the wrong Government official and not been allowed to amend their complaints after the statute had run gave rise to criticism of the Rule and the addition of the second and third sentences of its present text.[5] Ironically, it is the language added by the amendment in 1966 to broaden the category of harmless pleading errors which the Court construes today to narrow that category.[6]

## V

The Court does not tell us whether it would enforce an equally harsh construction of the Rule if the scrivener's error

---

[5] See Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 407–410 (1967).

[6] There is also irony in the way the Court gives lipservice to its duty to construe the Federal Rules of Civil Procedure in a way that will facilitate a proper decision on the merits. *Ante*, at 27. How different was the approach the Court considered appropriate in 1962:

"It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' *Conley* v. *Gibson*, 355 U. S. 41, 48. The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' Rule 1." *Foman* v. *Davis*, 371 U. S. 178, 181–182.

had been a mere misspelling, or perhaps a reference to Time, Inc., instead of Time, Incorporated. More importantly, the Court does not provide a satisfactory explanation of why this case is, in fact, any different from such a case.[7] Most importantly, the decision is the product of an unnecessary and unjust construction of the language of the Rule.

The Court recognizes that "there is an element of arbitrariness here," *ante*, at 31, but finds solace in the fact that arbitrariness is no stranger to the law. *Ibid.* The Court is, of course, correct that arbitrariness sometimes arises from the application of rules and laws to the complexity of human experience. Far less understandable is the Court's willingness to aggravate, rather than alleviate, that arbitrariness, particularly when the decision to do so is demonstrably at odds with the language, purpose, and history of the Rule.

I respectfully dissent.

---

[7] Indeed, if the misspelling of a name is sufficient to change the status of a legal document, then I assume that many of our much-discussed precedents had no legal force. See generally C. Wright, The Law of Federal Courts § 54, pp. 347–348, n. 5 (4th ed. 1983) (noting that the Court, and the official Reports, have continuously misspelled the parties' names in such cases as *Minersville School Dist.* v. *Gobitis,* 310 U. S. 586 (1940) (parties' name was "Gobitas"); *Dred Scott* v. *Sandford,* 19 How. 393 (1857) (party's name was "Sanford"); *Swift* v. *Tyson,* 16 Pet. 1 (1842) (party's name was "Tysen"); and *McCulloch* v. *Maryland,* 4 Wheat. 316 (1819) (party's name was "McCulloh")).