Bennett P. SMITH

v.

XEROX CORPORATION, et al.

Civ. A. No. 85–5090.

United States District Court,
E.D. Louisiana.

July 7, 1989.

William M. Detweiler, New Orleans, La., for Bennett P. Smith.

Lea & Gibbens, Arden J. Lea, Trial Atty., David J. L'Hoste, New Orleans, La., for plaintiffs.

Blue, Williams & Buckley, Stephen M. Little, C.T. Williams, Jr., Metairie, La., for Xerox Corp.

Boggs, Loehn & Rodrigue, Charles A. Boggs, Trial Atty., Thomas W. Lewis, New Orleans, La., for Loral Electro Optical Systems.

**ARCENEAUX, District Judge.**

Before the Court is defendant's Motion to Dismiss Pursuant to Rule 12(b) and Alternative Motion for Summary Judgment and its Motion for Partial Dismissal of Cross Claim. These motions arise from a tort suit filed by plaintiff after being severely injured during military training exercises at Fort Polk, Louisiana when an explosive cartridge in a shoulder mounted VIPER weapon simulator he was preparing to fire exploded prematurely, burning his arm and upper chest. Plaintiff filed this suit for personal injuries November 15, 1984 in the United States District Court for the Western District of Louisiana against Xerox Corporation ("Xerox"), the manufacturer of the VIPER system, and a number of other defendants who were subsequently dismissed. The suit was transferred to the Eastern District of Louisiana upon Xerox's unopposed motion to change venue.

On March 31, 1986, plaintiff amended his complaint to add Loral Electro Optical Systems Inc. ("Loral"), which was under contract with the United States Army to maintain the VIPER weapons, as a party defendant to the suit. (Doc. 5). Loral filed a timely answer into the record May 22, 1986, alleging, among other defenses, that of prescription since the suit was filed beyond the one year liberative prescriptive period provided for delictual, or tort, actions under Louisiana law, L.C.C. Art. 3492 (1984).

On November 18, 1987, this Court granted Xerox's Motion for Summary Judgment on the grounds that it was entitled to assert the governmental contractor defense and therefore had qualified immunity from any liability against plaintiff. (Doc. 71). Plaintiff appealed this ruling, which was affirmed February 23, 1989 by the United States Court of Appeals for the Fifth Circuit (Doc. 75). 866 F.2d 135.

Because plaintiff has not moved for rehearing of the Fifth Circuit's decision a rehearing *en banc* or filed a writ of certiorari with the United States Supreme Court as of this date and the requisite procedural delays to allow such action have elapsed (See Federal Rules of Appellate Procedure 34(b), 40 and Supreme Court Rule 20), this judgment is final.

■ Loral has moved for summary judgment on the grounds that prescription bars plaintiff's suit against it. This suit is brought in diversity so that this Court looks to Louisiana law to determine which law applies to adjudicate this dispute. Louisiana has adopted "interest analysis" for determining the choice of law issue in a tort action. *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973). According to this approach, Louisiana law should be applied when this state has an interest and the applicable foreign state either has none, or such interest is so slight, when balanced with Louisiana's that the application of Louisiana law is required. In this case, plaintiff is a Louisiana domiciliary and the accident took place in Louisiana. Loral is domiciled in California and doing business in Louisiana. California has an interest in having its law applied in this litigation since Loral is incorporated there and any judgment against it might have detrimental economic effects upon California citizens or the State. Louisiana on the other hand has a significant interest in protecting its citizens from damage caused by others. *Jagers*, 276 So.2d at 313. Because the Court believes Louisiana's interest as the situs state and domiciliary of the plaintiff outweighs that of California, it applies Louisiana law to this dispute.

■ The one year prescriptive period Louisiana law specifies for tort actions had clearly run at the time Loral was named in the suit. The only basis for this Court's power to adjudicate plaintiff's claims against Loral is the doctrine articulated in L.C.C. Art. 1799 (1985) ("Art. 1799") which provides an exception to prescription's effect for defendants who are found to be solidary obligors with defendants against

whom the plaintiff timely filed suit.[1]

Plaintiff cannot take advantage of Art. 1799 since Xerox has been dismissed from this suit. L.C.C. Article 2324 (1980)[2] ("Art. 2324") provides for solidary liability among defendants found to be "tortfeasors to the plaintiff victim." An obligation is defined in L.C.C. Art. 1794 (1985)[3] ("Art. 1794") as solidary as between obligors when "each obligor is liable for the whole performance." *See also, Duplechain v. Clausing Machine Tools*, 420 So.2d 720 (La.App. 1st Cir.1982). In this case Xerox has been dismissed. Because Xerox cannot be liable to plaintiff as a matter of law, it cannot be a solidary obligor with Loral.

Plaintiff argues that Art. 1799 should apply because a finding of immunity is not a determination that Xerox is not liable to him. Plaintiff says "Xerox ... enjoys a privilege with respect to its liability to the plaintiff. This does not mean that Xerox cannot be liable to (Plaintiff), but only that for reasons of public policy (plaintiff) will not be afforded recourse on Xerox's liability to him." (Doc. 81, p. 4). Because he has made a *prima facie* case of solidary liability between Xerox and Loral, plaintiff contends, Art. 1799 allows this suit to go forward against Loral.

While plaintiff makes an artful distinction, it is not persuasive. The articles concerning the nature of solidary obligation indicate that the doctrine governs relationships among the obligors found to be solidary with one another and between those obligors and the obligee. As a general rule, an obligee can look to any obligor found solidarily liable with other obligors for the entire amount of the judgment, Art. 1794. The paying obligor then has rights of contribution against the solidary obligors for their virile portions of the obligation. L.C.C. Art. 1804 (1985)[4] ("Art. 1804"). In short, solidary liability transfers the risk of recovery from the judgment creditor to the solidary debtor.

Obligees only derive this benefit, however, from "obligors," in this case co-tortfeasors. Whether a defendant does not share this status with another because it is found not liable or because it is incapable of being found liable to a plaintiff should make no difference for purposes of this analysis. Neither class of defendants can be made to answer to the plaintiff. Neither class is composed of obligors and so neither is capable of solidary obligation. As a result, Art. 1799 will not prevent prescription's effect on plaintiff's claims against Loral.

Applicable jurisprudence supports this analysis and conclusion. In *Crockett v. Avondale Shipyards, Inc.*, 538 So.2d 1133 (La.App. 5th Cir.1989) a plaintiff timely filed a personal injury suit against his statutory employer, Avondale Shipyards, Inc., ("Avondale") after suffering injuries while working on a land based drilling rig owned by Penrod Drilling Co. ("Penrod"). After the one year prescriptive period for delictual actions had expired, plaintiff joined Penrod. Avondale was later granted summary judgment on the grounds that it was plaintiff's statutory employer and thereby enjoyed ex delicto immunity provided in the Louisiana Worker's Compensation Act, L.S. A.–R.S. 23:1021 *et seq.* (1980). ("Compensation Act").

Penrod then brought an exception of prescription which was maintained. The Court rejected plaintiff's opposition, based on Art. 1799, because Avondale's immunity under the Compensation Act precluded soli-

---

1. Art. 1799 reads "the interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs."

2. Art. 2324 was amended in 1987 to alter the rules determining the effect of solidary liability in a delictual action. The changes do not effect this analysis in any way and so shall not be addressed here.

3. Art. 1794 restates the principle of law previously contained in L.C.C. Art. 2091 (1870) ("Art. 2091"). The Comment to Art. 1794 indicates that it does not effect any change in the law from Art. 2091.

4. The portion of Art. 1804 pertinent to this case was previously contained in L.C.C. Arts. 2104 and 2106 (1870). The comment to Art. 1804 indicates that no change in the law was intended by the revision and the language of Art. 1804 reinforces this intention.

dary obligation status with Penrod. *Id.* at 1134, 1135. The *Crockett* court explained that the statute, the Compensation Act, that created the plaintiff's right of action against his employer provided immunity from tort liability. The employer could not be found liable in this suit so it was not an obligor to the plaintiff and therefore could not be solidarily liable with Penrod. Therefore, nothing interrupted prescription against Penrod.

This analysis and result were identical to that of *Wicker v. Coca–Cola Bottling Co.,* 418 So.2d 1378 (La.Ct.App. 5th Cir.1982), (exception of prescription brought by defendant against whom state court suit untimely-filed maintained since defendants against whom suit was timely-filed held immune from liability under the Compensation Act) and *Gibson v. Exxon Corp.,* 360 So.2d 230 (La.App.Ct.1978) (prescription exception maintained in favor of defendant joined to suit after lapse of prescription after timely-filed defendant dismissed from suit because under the Compensation Act.) This principle in *Crockett* will preclude application of Art. 1799 in this case.

### Rule 15(c) Relation Back Doctrine

Plaintiff also contends that his amended complaint should relate back to the time of the original complaint against Xerox as provided for by Federal Rule of Civil Procedure 15(c) ("Rule 15(c)").[5] The Rule 15(c) relation back doctrine, if applicable, would interrupt prescription in order to allow a plaintiff to protect his rights against an unknown joint tortfeasor by bringing a timely action against a known defendant. *Hensgens v. Deere & Co.,* 869 F.2d 879, 881, 882 (5th Cir.1989).

The Supreme Court interpreted Rule 15(c) to authorize an amended complaint to relate back to the time of the original complaint if all factors of a four part test are met. First, the basic claim in the subsequent complaint must have arisen out of the conduct set forth in the original petition; second, the party sought to be added must have received notice of the action such that it will not be prejudiced in maintaining its defense; third, that party must know or should have known that but for a mistake of its identity, the action would have been brought against it and fourth, that the second and third parts must have been fulfilled within the applicable prescriptive period. *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986). Further, the burden of proving this four factor test is on the party invoking Rule 15(c). *Id.*

While plaintiff might satisfy the first factor, he fails to meet the last three. Plaintiff presents no evidence, and the Court can find none, to show that Loral received any notice of this lawsuit before being served with the amended complaint. Plaintiff argues that this Court should find Loral had appropriate notice because Loral Electro Optical Systems, Inc. was a division of Xerox before June 1983; because the Loral employees who carried out the maintenance services at the time of the accident were "for the most part," (Doc. 81, p. 13), the same people who did the same work for Xerox and because Loral personnel examined the misfired VIPER weapon immediately after the accident. Loral's "integral relationship with Xerox," says plaintiff, (Doc. 81, p. 14) requires relation back and precludes dismissal for violating prescription.

■ Rule 15(c) explicitly requires, however, and the Supreme Court has reaffirmed, that Rule 15(c)'s notice requirement refers to notice of the lawsuit and the likelihood that but for a mistake, the party

---

**5.** Rule 15(c) provides:

Whenever the claim or defense asserted in the amending pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, an amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will be prejudiced in maintaining his defense on the merits and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

at issue would be named in the suit. Rule 15(c); *Schiavone*, 477 U.S. at 30–32, 106 S.Ct. at 2385.

■ Plaintiff's invocation of Loral's relationship with Xerox is a chimera in this context. The only relationship Loral had with Xerox was as a buyer of its Electro Optical Systems Division in June 1983. (Doc. 83, Exh. A). While this division was responsible for manufacturing the VIPER System for Xerox, the VIPER system, including the weapon in question, was manufactured and sold by Xerox well before Loral bought the division. That the personnel of the divisions and their duties were the same after the sale does not in any way prove knowledge of a lawsuit filed more than one and one half years after the sale. There is no evidence that Xerox alerted Loral to the suit's existence or that Loral should have found or did find out about the action in any other way. That Loral personnel inspected the weapons immediately after the accident makes no difference in this analysis either. The notice required is of the lawsuit—i.e., defendant's potential liability for the accident. Because there is no evidence to support the Rule 15(c) requirements that Loral had notice of the lawsuit while the prescriptive period ran prescription's effect cannot be avoided by Rule 15(c).

### Stipulation Pour Autrui

■ Plaintiff also argues that he has an action against Loral since the contract between Loral and the United States relative to the VIPER simulator is a *stipulation pour autrui*, or a contract for the "benefit" of others. L.C.C. Art. 1978 (1985). The benefit in this case is the safety of all the users of the VIPER system. Since plaintiff asserts that he is within the beneficial class, he claims to have an action against Loral under the contract. Since liberative prescription for personal action under a contract is ten years from the date of knowledge of the violation, L.C.C. Art. 3499 (1984), plaintiff's amended complaint would be timely.

Initially, plaintiff has at least one important procedural obstacle to hurdle with this argument: he has not pleaded any contractual basis for his action against Loral. If there is merit to his new contention, plaintiff would have to ask the Court's leave to amend his complaint again and leave could be granted only upon a showing of cause. Federal Rule of Civil Procedure 15(d). Since the suit was filed nearly four years ago and this contractual theory is not based on a novel or emerging theory of law or upon facts which plaintiff only reasonably discovered recently, plaintiff would likely have difficulty meeting his burden.

Despite the procedural difficulties, the substantive contention cannot be supported by applicable law. The heart of a *stipulation pour autrui* is a contract that clearly reveals intent by the contracting parties to provide a benefit for a third party. L.C.C. Art. 1798 (1985), *Wallace v. Texaco*, 681 F.2d 1088, 1090 (5th Cir.1982) (quoting *Gateway Barge Line, Inc. v. R.B. Tyler Co.*, 175 So.2d 867 (La.App. 1st Cir.1965)). Louisiana courts emphasize that this benefit to the third party cannot be merely incidental to the contract's performance; it must be part of the condition or consideration for the contract. *HMC Management Corp. v. New Orleans Basketball Club*, 375 So.2d 700, 708 (La.App. 4th Cir.1979), *writ den.*, 378 So.2d 1384 (La.1980). That a third party derives a benefit from a contract does not make the latter a *stipulation pour autrui;* the benefit in question must be clearly intended by the parties and a part of the bargain struck thereby. *Wallace*, 681 F.2d at 1090.

The contract between the United States and Loral contains no language or intimation that the safety of the soldiers using the weapon was a purpose intended by either party. Plaintiff does not specify which provision of the contract shows such an intent. Instead, plaintiff contends that the intent of the entire contract "was to ensure the proper, safe and efficient functioning of the simulators ... for their intended use ..." (Doc. 81, p. 8) and that the proper and safe condition of there weapons was "... the very object of the contract itself." (*Id.* at 9).

Plaintiff bases this analysis on a generalized reading of the contract. Plaintiff's reading of the contract is no more plausible however, than one which leads to the opposite conclusion: that this weapons maintenance contract's primary purpose is not the safe use of the weapons but quickness of repairs, the economy with which maintenance is performed or most succinctly, the technological superiority and combat effectiveness of the system. These attributes can very well conflict with the user's safety and still be a purpose of the maintenance contract. *See, Boyle v. United Technologies Corp.*, —— U.S. ——, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

The contract (Doc. 81, Exh. 1) obligates Loral to maintain the VIPER simulators and contains requirements for space, tools and equipment (Paragraphs 2, 10), for recruiting and training personnel (Paragraph 3), for Loral's duty to maintain the weapon in "normal operating condition" (Paragraph 5) and for reporting and scheduling work performed under the contract (Paragraphs 8–11). Paragraph 8, for example, the most detailed in the contract, establishes precise repair turn-around and delivery requirements that could be exclusive of user safety. In short, there is no indication in this contract that user safety is intended by this contract any more, or even as much, as these other qualities.

Even assuming that the contract provided a "benefit" of safety it would be only incidental to the contract's purpose of keeping a technologically advanced and sensitive weapons system functioning and combat ready. An incidental benefit cannot support *stipulation pour autrui* status, *HMC Management Corp.*, 375 So.2d 708, and, as a result, the ten year contractual prescription period cannot apply to plaintiff's claims.

Because no theory articulated by the plaintiff rescues him from the effects of the lapse of delictual prescription,

IT IS ORDERED that defendant Loral Electro Optical Systems Inc.'s Motion to Dismiss Pursuant to Rule 12(b) and Alternative Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Loral Electro Optical Systems, Inc.'s Motion for Partial Dismissal of Cross Claim, which is unopposed and otherwise has merit, is GRANTED.

No hearing will be held on these motions.