Nestor **AYALA SERRANO,**
Plaintiff, Appellee,

v.

Cruz **LEBRON GONZALEZ,**
Defendant, Appellant.

No. 89–1366.

United States Court of Appeals,
First Circuit.

Heard March 8, 1990.

Decided July 18, 1990.

---

Reina Colon De Rodriguez, Asst. Sol. Gen., with whom Jorge E. Perez Diaz, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief for defendant, appellant.

Luis Angel Lopez Olmedo for plaintiff, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and RE,[*] Chief Judge.

RE, Chief Judge.

Defendant-appellant, Cruz Lebrón González (Lebrón), a prison officer, appeals from a judgment of the District Court for the District of Puerto Rico which, after a bench trial, granted plaintiff-appellee Néstor Ayala Serrano (Ayala), an inmate, $20,000, with costs, for deprivation of his civil rights under 42 U.S.C. § 1983.

Ayala alleged that, on May 11, 1983, while an inmate at the State Penitentiary in Rio Piedras, Puerto Rico, he was assaulted and stabbed by two other inmates. Ayala also alleged that Lebrón, who was present at the time of the assault, violated Ayala's constitutional rights by failing to take any action to prevent the assault.

On appeal, Lebrón contends that the district court erred in not dismissing Ayala's claim because: the claim was barred by the applicable statute of limitations; Lebrón was protected by qualified immunity; and the district court did not have subject matter jurisdiction. Lebrón also contends that the decision should be reversed because the

---

[*] The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

factual findings of the district court during the bench trial were clearly erroneous.

The questions presented on this appeal are whether:

1) the district court erred in denying Lebrón's motion for summary judgment because it determined that the amendment of Ayala's complaint to add Lebrón as a defendant satisfied the requirements of Fed. R.Civ.P. 15(c), and, hence, related back to the filing of Ayala's original complaint, which was within the applicable statute of limitations; Lebrón was not protected by qualified immunity; the district court had subject matter jurisdiction over Ayala's claim, and

2) whether the judgment should be reversed because the factual findings of the district court during the bench trial were clearly erroneous.

We hold that the district court did not err in determining that the amendment of the complaint to add Lebrón as a defendant satisfied the requirements of Fed.R.Civ.P. 15(c), that Lebrón was not protected by qualified immunity, and that the district court had subject matter jurisdiction. Since we also hold that the factual findings of the district court were not clearly erroneous, the judgment of the district court is affirmed.

## BACKGROUND

On May 11, 1983, Néstor Ayala Serrano (Ayala), an inmate in the Intensive Treatment Unit (UTI) of the State Penitentiary at Rio Piedras, Puerto Rico, left a workshop on the lower level of the UTI to return to his cell on the upper level. As Ayala approached the electronic iron gate separating the levels, he signalled to a prison officer sitting at the controls who opened the gate. After Ayala passed through the gate, he was assaulted by two fellow inmates who had been lying in wait for him. Ayala suffered seven stab wounds during the assault.

On November 28, 1983, Ayala filed a *pro se* complaint in the United States District Court for the District of Puerto Rico. The complaint, which was written in Spanish, alleged that Ayala had been subjected to serious physical injury. The *pro se* complaint sought damages for physical and mental injury, and transfer to a minimum security prison. Ayala named as defendants Jorge L. Collazo Torres, the Administrator of Corrections of the Commonwealth of Puerto Rico, and Carmelo Gonzalez Rivera, the Superintendent of the State Penitentiary at Rio Piedras.

Subsequently, Ayala obtained counsel, and, on June 28, 1984, an amended complaint was filed, adding as defendants the Commonwealth of Puerto Rico, its Department of Corrections, and Jaime Rivera Torres, a Department official. In his amended complaint, Ayala sought damages, under 42 U.S.C. § 1983, for personal injury caused by the violation of his constitutional rights during the assault of May 11, 1983. On August 21, 1984, Ayala filed a second amended complaint, adding as a defendant Cruz Lebrón González (Lebrón), a prison officer on duty in the UTI at the time Ayala was assaulted.

Alleging that it was immune from suit and that the complaint failed to state a claim upon which relief could be granted, the Commonwealth of Puerto Rico moved to dismiss Ayala's complaint. The district court entered an order granting the motion to dismiss as to all defendants. Ayala appealed to this court, and we affirmed the dismissal as to all the defendants except Lebrón. We also remanded to the district court to determine whether Ayala's motion to amend the complaint by adding Lebrón as a defendant satisfied the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. *See Serrano v. Torres*, 764 F.2d 47, 50 (1st Cir.1985).

On remand, Lebrón moved for summary judgment. Lebrón contended that the action should be dismissed because the amendment of the complaint to add Lebrón as a defendant did not satisfy the requirements for relation back set by Rule 15(c), and, hence, was time barred by the applicable statute of limitations. Lebrón also contended that he was entitled to qualified immunity. *See Ayala Serrano v. Collazo Torres*, 650 F.Supp. 722, 724 (D.P.R.1986).

The district court noted that, under Rule 15(c), a motion to add a defendant will relate back to the date of the filing of the original complaint if the party to be added "'received such notice of the ... action that [the party] will not be prejudiced ..., and ... [the party] knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.'" *Id.* at 725 n. 3 (quoting Fed.R.Civ.P. 15(c)). The district court found that it could be presumed that Lebrón had notice of the filing of Ayala's original complaint, since Lebrón "is an employee whose immediate superiors and colleagues were named and served as defendants in the initial action." *Id.* at 726. The court also noted that Lebrón was present during the assault, assisted in the subsequent investigation, and continued to work in the UTI while Ayala was the subject of extensive special protection. *See id.* at 727. Hence, the court concluded that Lebrón had notice of the filing of the original complaint, and that Lebrón was not prejudiced by the delay caused by Ayala's failure to name him as a defendant in the original complaint. *See id.* at 726–27.

The court noted that the applicable statute of limitations period is one year, but determined that "Lebrón knew or should have known that he was a proper party to the action within one year of the incident." *Id.* at 727. Hence, the court held that "Lebrón was sufficiently apprised of plaintiff's suit to satisfy the relation-back provisions of Rule 15(c)." *Id.* at 729.

Since it was not the subject of the remand order, the court did not rule on the issue of Lebrón's qualified immunity defense. *See id.* at 729. On the basis of his claimed qualified immunity defense, Lebrón subsequently filed a new motion for summary judgment, and submitted affidavits. On April 6, 1988, the court denied Lebrón's motion.

At the bench trial, on December 13, 1988, both Ayala and Lebrón testified about the assault, and there was no other eyewitness testimony. The district court noted that "[t]his case hinges upon the credibility of the parties." *Ayala Serrano v. Lebrón González*, Civil No. 83–2909 HL, slip op. at 4 (D.P.R. Dec. 22, 1988). According to Ayala's testimony, several prison officers, including Lebrón, were present at the time the gate opened. Ayala testified that he saw the two inmates lying in wait for him, but proceeded through the gates nonetheless because of the presence of the prison officers. *See id.* at 4. Ayala stated that during the attack, all of the officers, including Lebrón, did nothing to protect him or to prevent the assault. *See id.* at 4–5. Ayala stated that, even after the assault, the prison officers did not summon help or assist him to the prison dispensary. *See id.* at 5.

In contrast to the testimony of Ayala, Lebrón testified that, during the assault on Ayala, he was separated from Ayala by a glass divider and could not see past the iron gate. *See id.* at 5. The district court, however, noted that Lebrón testified that after witnessing the closing of the iron gate Lebrón "noticed a strange movement, like a noise, occurring behind the gate." *Id.* at 5. Lebrón stated that after investigating, he saw the assault, and ordered another officer to open the gate. Lebrón testified that he then halted the fight and, with another officer, brought Ayala to the prison dispensary. *See id.* at 5.

On cross examination, however, Lebrón testified that as he attempted to stop the assault, he too was attacked by the two inmates. *See id.* at 6. Nevertheless, Lebrón admitted that he had never reported the assault on himself to the investigators. *See id.* Lebrón also stated on cross examination that, although Ayala had not been gagged by the assaulting inmates, Ayala remained silent throughout the assault. *See id.*

The court determined that Lebrón's testimony was untrustworthy, noting that "[o]n direct examination, he never stated that he was almost attacked by one of the assailants," *id.* at 7, and "failed to include said incident in his sworn affidavit attached to his motion for summary judgment." *Id.* at 8. The court "also [found] incredulous [Lebrón]'s testimony that [Ayala] did not

yell, scream, call out or complain of pain while [the attacker] was inflicting … seven stab wounds." *Id.* Hence, based on the testimony and demeanor of the parties, the district court disbelieved Lebrón, and concluded that Ayala's testimony was more credible. *See id.* at 7.

On December 22, 1988, the district court entered judgment in favor of Ayala, and awarded him $20,000 for the deprivation of his constitutional rights by Lebrón.

## DISCUSSION

### I. *Statute of Limitations*

■ The Supreme Court has stated that Rule 15(c) of the Federal Rules of Civil Procedure permits relation back to the time of the filing of the original complaint, of an amendment to add a defendant, if the following factors are met:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986). The applicable statute of limitations for section 1983 cases brought in the federal district court of Puerto Rico is one year. *See Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30, 31 (1st Cir.1985) (citing P.R. Laws Ann. tit. 31, § 5298(2) (1968)).

In order to satisfy the first prong of the *Schiavone* test, the basic claim against Lebrón must arise out of the events set forth in Ayala's original, *pro se* complaint. Since Ayala sued *pro se*, it is important to note that his pleadings are to be liberally construed. *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Gilday v. Boone*, 657 F.2d 1, 2 (1st Cir.1981).

Ayala's *pro se* complaint alleged mistreatment by prison officers and serious physical injury. Although the complaint did not contain the specificity that undoubtedly would have been present had it been prepared by an attorney, it nevertheless alleged the injury that could only have been caused by the assault of May 11, 1983. Lebrón's amended complaints, drafted by counsel, contained specific allegations pertaining to the assault. In light of the liberal construction to be given *pro se* complaints, on the facts presented the district court did not err in its determination that the allegations against Lebrón arose from the events alleged in Ayala's *pro se* complaint.

The second requirement established by the Supreme Court in *Schiavone* is that Lebrón received sufficient notice of the lawsuit so that he will not be prejudiced in presenting his defense.

As noted in *Schiavone*, in a Rule 15(c) analysis "[t]he linchpin is notice, and notice within the limitations period." 477 U.S. at 31, 106 S.Ct. at 2385. The courts have developed an "identity of interest" concept as a judicial gloss on Rule 15(c). *See Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102 (1st Cir.1979). Under this concept, an amendment to add a party as a defendant will relate back to the time of the filing of the original complaint if "the named defendant and the party that the plaintiff actually intended to sue have an 'identity of interest,' … [and] the other requirements of Rule 15(c) have been satisfied." 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1499 (2d ed.1990). In this circuit, the parties have an "identity of interest" "when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced." *Hernandez Jimenez*, 604 F.2d at 102–03.

In this case, the originally named defendants, the Administrator of Corrections of the Commonwealth of Puerto Rico, and the Superintendent of the State Penitentiary at Rio Piedras, were Lebrón's superiors.

Lebrón was present during the assault on Ayala. After the complaint had been filed, Lebrón remained a prison officer, and continued working in the UTI in Rio Piedras, where Ayala remained as an inmate. Indeed, after the filing of the complaint Ayala was the subject of special protective measures at the UTI.

Under these circumstances, it is entirely reasonable to assume that Lebrón was notified or knew of the lawsuit commenced by Ayala as a result of the assault. Hence, we conclude that the district court did not err in its determination that Lebrón must have received notice of Ayala's lawsuit within one year of the assault.

The third requirement established by *Schiavone* is that Lebrón knew or should have known that, but for a mistake in identity, he would have been named as a defendant in the original complaint. Lebrón maintains that "inasmuch as the emphasis of the original complaint was made on the petition for Ayala Serrano's transfer of prison, Cruz Lebrón could very well have believed, that he was not named as party because he had no power to grant, deny or recomend [sic] inmates' petitions for prison transfers." (footnote omitted).

It is to be noted, however, that Ayala's original complaint clearly alleged that Ayala had suffered physical injury and serious bodily harm as a result of an assault. Lebrón was present at the assault, was aware of the injuries suffered by Ayala, and knew of Ayala's subsequent hospitalization. Under these circumstances, we hold that the district court did not err in determining that Lebrón knew, or had reason to know, that he, Lebrón, was intended to be named as a defendant in the original complaint, founded upon the injuries suffered in the assault of May 11, 1983.

The fourth requirement for permitting the relation back of Ayala's complaint is that "the second and third requirements must have been fulfilled within the prescribed limitations period." *Schiavone*, 477 U.S. at 29, 106 S.Ct. at 2384. In this case, although the applicable period is one year, Lebrón not only was aware of the assault and the injuries to Ayala, but he continued to work in the UTI after the assault on Ayala, and knew of the increased protective measures that were taken. On these facts we hold that the district court did not err in its determination that, within one year of the assault on Ayala, Lebrón knew of Ayala's lawsuit and that, if not for a mistake in identity, he, too, would have been named as a defendant.

Hence, we hold that the district court did not err in determining that the addition of Lebrón as a defendant satisfied the requirements of Rule 15(c).

## II. *Qualified Immunity*

Lebrón's second contention is that, since he was entitled to qualified immunity, the district court erred in denying his motion for summary judgment.

When applicable, the doctrine of qualified immunity may shield public officers from liability when, in the course of their duties, they violate the constitutional rights of persons. A recent articulation of the doctrine is found in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), wherein the Supreme Court stated that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." In explaining the confines of the doctrine, the Supreme Court noted that "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Id.* at 818, 102 S.Ct. at 2738. The Court explained that, if at the time of the alleged violation, "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818–19, 102 S.Ct. at 2738.

In this case, therefore, Lebrón's qualified immunity claim should fail if, under clearly established law, Ayala had the constitutional right to have a prison guard, who was

**14**

present at the scene, intervene in the assault of May 11, 1983.

The eighth amendment to the United States Constitution, which prohibits "cruel and unusual punishment," was designed especially for the protection of those convicted of crimes. *See Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). Furthermore, it is well established that prison officials have a constitutional duty " 'to protect prisoners from violence at the hands of other prisoners.' " *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.) (quoting *Leonardo v. Moran,* 611 F.2d 397, 398–99 (1st Cir.1979)), *cert. denied,* 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988). *See also Blankenship v. Meachum,* 840 F.2d 741, 742 (10th Cir.1988); *Meriwether v. Faulkner,* 821 F.2d 408, 417 (7th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984); *Woodhous v. Commonwealth of Virginia,* 487 F.2d 889, 890 (4th Cir.1973).

In this case, the credible evidence at trial indicates that Lebrón, a prison officer who was present at the scene of an assault on Ayala, an inmate, failed to come to Ayala's aid. Hence, it seems clear that Lebrón failed to comply with a clearly established constitutional duty of protecting a prisoner from violence at the hands of other prisoners. Lebrón, however, maintains that "[e]ven defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability from damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."

In *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), the Supreme Court clarified the standard of qualified immunity established by *Harlow,* and noted that a public official defendant is entitled to qualified immunity unless no reasonably competent public officer would have acted in the same manner. *See also Fontane–Rexach v. Puerto Rico Elec. Power Auth.,* 878 F.2d 1493, 1497 (1st Cir. 1988).

In this case, the evidence at trial indicated that Lebrón stood by while Ayala was assaulted. Clearly, Lebrón could have intervened either to stop the assault, or to have summoned the help of other guards. Under the circumstances, Lebrón's failure to act was clearly unreasonable. Hence, we agree with the district court that Lebrón was not entitled to qualified immunity.

### III. *Subject Matter Jurisdiction*

■ Lebrón's third contention is that the district court did not have subject matter jurisdiction over the action. In support of this contention, Lebrón asserts that "[b]y failing to plead that the District Court had jurisdiction over this suit pursuant to 28 USC 1343(3), Ayala–Serrano did not comply with the ... Rule 8(a)(1) requirement that a short and plain statement of the grounds upon which the court's jurisdiction depends be included in the complaint."

■ It is clear that 42 U.S.C. § 1983 "provides for a broad and comprehensive civil rights jurisdiction, and was intended 'to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief.' " *Freeman v. Rideout,* 808 F.2d 949, 950 (2d Cir.1986) (quoting *Burnett v. Grattan,* 468 U.S. 42, 55, 104 S.Ct. 2924, 2932, 82 L.Ed.2d 36 (1984)), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). While 42 U.S.C. § 1983 provides plaintiffs with a cause of action, it does not confer subject matter jurisdiction on a federal district court. *See Cervoni v. Secretary of Health, Educ. and Welfare,* 581 F.2d 1010, 1019 (1st Cir.1978). Federal jurisdiction over section 1983 claims is provided for by 28 U.S.C. § 1343(a)(3). In this case, Ayala's *pro se* complaint, as well as his two amended complaints, alleged jurisdiction under 42 U.S.C. § 1983. The complaints did not allege jurisdiction under 28 U.S.C. § 1343(a)(3).

Rule 8(a)(1) of the Federal Rules of Civil Procedure requires a pleading to set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has juris-

diction and the claim needs no new grounds of jurisdiction to support it...." This court has recognized that federal subject matter jurisdiction may be established by a complete reading of a complaint, "even though the jurisdiction expressly asserted was improper." *Commonwealth of Massachusetts v. United States Veterans Admin.*, 541 F.2d 119, 122 (1st Cir.1976). *See also Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir.1980); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1206 (1969).

 Furthermore, we have noted that *pro se* pleadings are to be liberally construed, in favor of the *pro se* party. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. A review of Ayala's *pro se* complaint leaves no doubt that it alleges personal injury as a result of mistreatment in a prison setting, a federal claim under 42 U.S.C. § 1983 and under 28 U.S.C. § 1343(a)(3). A liberal reading of Ayala's two amended complaints also plainly indicates that they comprise section 1983 claims which are cognizable in a federal court. Hence, since the cause of action was one over which the district court had subject matter jurisdiction, the court had jurisdiction over Ayala's claim.

IV. *Fact Findings of the District Court*

Lebrón's final contention is that "[a] review of the entire record demonstrates, not only that there is no substantial evidentiary basis for the Court's determination but also that a mistake has been committed." Lebrón asserts, therefore, that "the imposition of monetary liability on Cruz Lebrón is a clearly erroneous determination that should be reversed."

At the bench trial, both Lebrón and Ayala testified as to the events of May 11, 1983. No other eyewitnesses testified. The district court determined that Lebrón's testimony was untrustworthy and noted that, on direct testimony, Lebrón omitted his assertion that he had been assaulted by one of the inmates during the May 11 incident. The court also found incredible Lebrón's testimony that Ayala did not call out during the assault, and noted that Lebrón failed to call any corroborating wit-

nesses. The court also commented that the demeanor evidence favored Ayala's testimony rather than Lebrón's.

Under the circumstances, the district court was within its discretion in its role as fact finder, in determining that Ayala's testimony was more trustworthy than Lebrón's. Hence, we hold that the factual findings of the district court, were not clearly erroneous.

## CONCLUSION

Since we hold that the district court did not err in denying Lebrón's motion for summary judgment, and that the factual findings of the district court were not clearly erroneous, the judgment of the district court is affirmed.