Edwin OCASIO ORTIZ, et al., Plaintiffs,

v.

**Ismael BETANCOURT LEBRON,
et al., Defendants.**

Civ. No. 91–2425 HL.

United States District Court,
D. Puerto Rico.

Dec. 15, 1992.

Carlos F. Lopez–de–Azua, Santurce, PR, for plaintiffs.

Sylvia Roger–Stefani, Dept. of Justice, Federal Litigation Div., San Juan, PR, for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion to dismiss filed by five codefendants in this action: (1) Ramon Sanchez Rosario, (2) Fernando Diaz de Jesus, (3) Hector L. Ocasio, (4) Jose A. Rivera and (5) Miguel Solla (the "Moving Codefendants"). The Moving Codefendants argue that the Amended Complaint does not relate back to the date of the original Complaint and consequently that the action against them is time-barred. Plaintiffs, in turn, have urged the Court to adopt the relation back and John Doe rules of Puerto Rico in assessing the timeliness of the proposed Amended Complaint. Plaintiffs contend that the rules of civil procedure of Puerto Rico allow relation back of an amendment to substitute a John Doe defendant under certain conditions, creating a relatively unrestrictive procedural regime which is consistent with the liberal climate for amendments established by Fed.R.Civ.P. 15. Plaintiffs view the issue before the Court as whether a federal court sitting in § 1983 action, given the absence of a federal rule concerning the use of John Doe defendants, should apply the relation back provisions of Fed.R.Civ.P. 15(c) to determine the timeliness of an amended pleading substituting real names for fictitious designations or use the standards set by the applicable limitations law. Alternatively, plaintiffs contend that the proposed Amended Complaint should relate back because it satisfies the requirements of Fed. R.Civ.P. 15(c)(3). Neither party, however, sufficiently addresses the recent amendments to Fed.R.Civ.P. 15(c) and the implications of these changes to the present motion. Nor does either party consider whether, for the purposes of the present motion, subsection 15(c)(1) or 15(c)(3) should apply.

## I. FACTUAL BACKGROUND

In order to address this motion a chronology of the pertinent events in the processing of this claim is necessary. At approximately 5:30 in the morning on November 15, 1990, plaintiffs, Edwin Ocasio Ortiz, his wife, two children, mother and step-father were awakened by the noise of several individuals forcibly entering their apartment. The entrants were members of a narcotics and vice control unit of the Police Department of Puerto Rico executing a search warrant. A search of the apartment and its contents was conducted but ultimately proved fruitless. Plaintiffs claim that the officers were physically, verbally, and mentally abusive during the course of the search. Plaintiffs also claim that officers at the scene denied repeated requests by Mr. Ocasio Ortiz to inspect the search warrant. It was later revealed that the police team had, in fact, searched the wrong apartment.

Plaintiffs brought this § 1983 action alleging, in essence, that both the search, itself, and the conduct of the officers during the search violated their constitutional rights. Plaintiffs invoke the Court's supplemental jurisdiction to hear claims arising under the constitution and laws of the Commonwealth of Puerto Rico.

On November 13, 1991, a timely Complaint was filed naming three high ranking

police officials who were not directly involved in the incident: Ismael Betancourt Lebron, Col. Luis A. Gomez Sotomayor and Capt. Angel F. Rodriguez Melendez (the "Original Codefendants"), and ten pairs of John Doe defendants, each consisting of a husband and wife and their respective conjugal partnerships. On June 11, 1992, nearly seven months after the Complaint was filed and the limitations period had expired, plaintiffs tendered an Amended Complaint in which the ten John Doe defendants were identified with their real names and an eleventh defendant was added. Plaintiffs attribute the delay in identifying the officers directly involved in the search to the "stonewalling" and "resistance" of the Original Codefendants. Several events relevant to this assertion deserve mention.

There is some dispute as to when plaintiffs notified the Original Codefendants with a First Set of Interrogatories, and codefendant Betancourt Lebron with a First Request for Production of Documents. Plaintiffs claim they notified the Original Codefendants with these requests on December 18, 1991. The Original Codefendants claim that copies of the discovery requests were not received until January 27, 1992. Nevertheless, on March 13, 1992, this Court granted the Original Codefendants until March 27, 1992 to answer plaintiffs' interrogatories and request for production of documents. In various motions plaintiffs advanced the claim that these discovery requests were primarily aimed at identifying and obtaining information regarding the John Doe codefendants designated in the original Complaint. On March 27, 1992, the Original Codefendants filed a request for a thirty day extension to answer plaintiffs' discovery requests, which we granted on April 21, 1992, ordering the Original Codefendants to comply by April 30, 1992. According to plaintiffs, these delays and extensions made it impossible for them to observe a Court imposed deadline to name the unknown defendants by April 25, 1992. Accordingly, on May 19, 1992, the Court granted plaintiffs an extension until June 1, 1992 to identify the John Doe defendants. On May 20, 1992 plaintiffs filed a motion informing the Court that the Original Codefendants had agreed to provide answers to the interrogatories by May 29, 1992. Plaintiffs were served with the answers to the interrogatories as promised on May 29, 1992. On June 11, 1992, the Amended Complaint naming the unknown defendants who had actually supervised and conducted the search was filed. On June 11, 1992 plaintiffs also requested issuance of summons as to the newly added eleven codefendants. The Moving Codefendants were each served with a summons and copy of the Amended Complaint in August or September of 1992.

## II. THE DECEMBER 1, 1991 AMENDMENTS TO THE RELATION BACK PROVISION OF RULE 15 OF THE FEDERAL RULES OF CIVIL PROCEDURE ·

In reviewing the present motion, we are mindful that Rule 15(c) has been recently amended, effective December 1, 1991. The relevant portions of Fed.R.Civ.P. 15(c), as amended, read as follows:

**(c) Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

\*       \*       \*       \*       \*       \*

(3) the amendment changes a party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m)[1] for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the ac-

---

1. Amended Rule 4(m) is now Rule 4(j). It provides that service on defendants may be made within 120 days of the filing of the complaint.

tion would have been brought against the party.

The Advisory Committee Notes accompanying the amendment to paragraph 15(c)(1) state that this new provision is intended to "make it clear the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law." Fed.R.Civ.P. 15(c)(1), Advisory Committee Notes (1991). The Notes clearly imply that this provision is applicable in both diversity and federal question cases. Additionally, the Advisory Committee Notes state that if the controlling body of limitations law provides a more lenient principle of relation back than the one afforded by the rule, it should be available to preserve the claim. In two recent cases, courts applied relation back principles derived from the applicable state limitations law in accordance with 15(c)(1). *Jordan v. Tapper*, 143 F.R.D. 567 (D.N.J.1992), *Crowe v. Mullin*, 797 F.Supp. 930 (N.D.Ala.1992).

■ Prior to the recent amendment of Rule 15(c), the standard for relation back under subsection 15(c)(3) was set forth in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Under *Schiavone*, the four prerequisites that must be fulfilled for an amended pleading to relate back are: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the proscribed limitations period. *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379. Under the recent amendments to subsection 15(c)(3), "the notice required ... no longer is tied to the governing limitations period, but is linked to the federal service of process period of 120 days or any additional time resulting from a court-ordered extension." 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1498, at 3 (1992 Supplement), *see also, Luis Orlando Rosario v. Ismael Betancourt Lebron*, 144 F.R.D. 14 (D.P.R.1992). Thus, under 15(c)(3) as amended, if the original complaint is filed, for instance, two days prior to the end of the limitations period, notice may still be received within the following 120 day period. For a proposed amended pleading to relate back under *Schiavone*, however, notice would had to have been received prior to the filing of the complaint or within the last two days of the limitations period. *See e.g., Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543, 545–546 (5th Cir.1992).

Rule 15(c)(3) now requires the plaintiff to prove three things: first, that the cause of action to be asserted in the amended pleading arises out of the same facts as the original pleading [2]; second, that within 120 days of filing the complaint or longer for good cause shown the proposed defendant had notice of the proposed action; and third, that within that same time period the proposed defendant knew or should have known that but for a mistake in the identity of the party the action would have been brought against the proper party. *Hurst v. Beck*, 1992 WL 189496, 1992 U.S.Dist. Lexis 11377, (E.D.Pa.1992), *Great Northeastern Lumber & Millwork Corp. v. Pepsi–Cola Metropolitan Bottling Co.*, 785 F.Supp. 514, 516 (E.D.Pa.1992).

The Advisory Committee Notes accompanying the recent changes to Rule 15(c) make it clear that the provision has been expressly liberalized. *See, Skoczylas*, 961 F.2d at 545–546, *Hill v. United States Postal Service*, 961 F.2d 153, 155–156 (11th Cir.1992). Indeed, the amendment was designed to produce a different result from *Schiavone*, which was inconsistent with the liberal pleading practices afforded by Fed. R.Civ.P. 8. Fed.R.Civ.P. 15(c)(3), Advisory Committee Notes (1991), *Hill*, 961 F.2d at 155–156. In light of these important

---

**2.** This item is not at issue here. The Amended Complaint seeks to substitute the names of defendants involved in the allegedly illegal search whose identities were unknown when the complaint was originally filed.

changes to the relation back provision of Rule 15(c), we turn next to the question of which provision, (c)(1) or (c)(3), should be applied to test the timeliness of the proposed Amended Complaint.

III. DOES 15(c)(1) OR 15(c)(3) APPLY?

Neither party to this motion addresses the threshold matter of which provision of Rule 15(c) should be applied by the Court. As a consequence of the recent amendments to the rule, in cases where the amended pleading seeks to add parties as opposed to claims which are covered by 15(c)(2), the question of whether subsection (c)(1) or (c)(3) applies determines whether the Court's analysis will be conducted according to state relation back rules or the federal standard.

The Court notes that plaintiffs have not argued that new subsection 15(c)(1) should apply. They urge the Court to apply Puerto Rico's relation back and John Doe rules but they do not suggest that this result is compelled by subsection (c)(1). Nevertheless, the Court is unable to discern any statutory prohibition to the application of 15(c)(1) to the present motion. The fact that jurisdiction is predicated on a federal question should have no bearing on the issue, because the Advisory Committee Notes clearly contemplate that this paragraph will apply irrespective of the jurisdictional basis of the action. *See* Fed.R.Civ.P. 15(c)(1), Advisory Committee Notes (1991).

■ Subsection (c)(3), formerly the second sentence of Rule 15 prior to the recent amendments, is implicated only when the proposed amendment "changes a party or the name of a party against whom a claim is asserted." *See*, 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1498, at 127 (1990). However, the word "changes" has been broadly defined as including amendments that add or drop parties, as well as amendments that substitute defendants. *Id.*, at 127. In the present motion, the amendment seeks to substitute the real names of John Doe defendants whose identities were unknown

when the Complaint was filed. Although there is no provision in the Federal Rules of Civil Procedure either authorizing or expressly prohibiting the use of fictitious · parties, *Craig v. United States*, 413 F.2d 854, 856 (9th Cir.1969), cert. denied 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969)[3], the Third Circuit has held that changing the name of a fictitiously named defendant to the proper party is a change of a party and the amendment will relate back only if the requirements of Rule 15(c) are met. *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174 (3d Cir.1977). The First Circuit has implicitly adopted this position.

In both *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99 (1st Cir.1979) and *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8 (1st Cir.1990), the First Circuit conducted its analysis of the timeliness of a proposed amendment in accordance with Rule 15(c)(3) and *Schiavone* despite the fact that plaintiff was not "changing" the proposed defendants but simply sought to add them to the action. Similarly, in *Burgos Martinez v. Rivera Ortiz*, 715 F.Supp. 419 (D.P.R.1989), a section 1983 action which did not entail an actual change of defendant, this Court applied 15(c)(3) to test the timeliness of an amendment replacing John Doe defendants with actual names. *Id.*, 715 F.Supp. at 422. In fact, in *Burgos Martinez*, the Court specifically declined to apply Puerto Rico Rule of Civil Procedure 15.4, 32 L.P.R.A.App.III, the same rule which plaintiffs in this case recommend we adopt, over Fed.R.Civ.P. 15(c). The position implicit in these decisions is that substitution of actual parties for fictitiously named defendants or addition of defendants not previously named constitute pleading amendments whose timeliness may be analyzed pursuant to the relation back standard of 15(c)(3).

■ Having concluded that neither 15(c)(1) nor 15(c)(3) is inapplicable to the present motion, the Court elects to apply 15(c)(3) as opposed to the relation back and

---

**3.** *See also, Santiago v. Becton Dickinson & Co., S.A.*, 539 F.Supp. 1149, 1152 (D.P.R.1982) (noting that the federal rules do not address the particular problem of John Doe defendants).

John Doe rules of the Puerto Rico code of civil procedure, pursuant to 15(c)(1). This decisions rests on two considerations. First, the Advisory Committee Notes to the recent amendments to Rule 15 state that subsection (c)(1) is a new provision "intended to make it clear that the rule [15] does not apply to preclude any relation back that may be permitted under the applicable limitations law." Similarly, the Notes state that whatever the controlling body of limitations law, "if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." These comments suggest that subsection (c)(1) should be construed to prevent the preclusion of . pleading amendments by the federal rules when relation back principles of the applicable limitations law would be available to save the claim. *See* 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1503, at 7 (1992 Supplement). In the instant case, there will be no need for recourse to state law if the proposed amendment meets the relation back standard of 15(c)(3).

A second reason why the Court chooses to apply subsection 15(c)(3) is because this comports more closely with the practice of the First Circuit prior to the recent amendments to the rule without undermining the letter or spirit of those amendments. The First Circuit has adhered to a set of well-settled principles in deciding whether the timeliness of amended pleadings should be governed by state or federal law. In diversity cases, the question of whether an amendment seeking to substitute a party relates back to the date of the original complaint has been deemed to have a direct impact on Puerto Rico's substantive law and is therefore governed by Puerto Rico's relation back doctrine. *Hernandez Moreno v. Serrano Marrero,* 719 F.Supp. 70 (D.P.R.1989), *Santiago v. Becton Dickinson & Co., S.A.,* 539 F.Supp. 1149 (D.P.R. 1982), *Santiago–Rivera v. Royal Ins. Co. of Puerto Rico,* 613 F.Supp. 121 (D.P.R. 1985), aff'd without op., *Santiago–Rivera v. Royal Ins. Co.,* 782 F.2d 1025 (1st Cir. 1985), *e.g., Victor M. Ortiz Diaz v. R & R Motors Sales Corp.,* 92 JTS 140, 10040

(1992). However, the same does not hold true for federal question cases, in general, nor specifically for section 1983 cases. In cases involving section 1983, our Circuit has consistently applied Rule 15(c). *See e.g., Hernandez Jimenez,* 604 F.2d at 102, *Ayala Serrano v. Collazo Torres,* 650 F.Supp. 722 (D.P.R.1986), aff'd *Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8 (1st Cir.1990). We believe that both consistency and efficiency will be promoted if we first turn to the binding rules and decisions of the Circuit, and seek recourse to a more forgiving state rule, in accordance with 15(c)(1), only if the federal standard would preclude the amendment. This practice would not frustrate the policy behind amended Rule 15(c) of affording relation back under the applicable limitations law when the standards of the federal rule are not met.

## IV. THE MOVING CODEFENDANTS HAD THE REQUISITE NOTICE OF PLAINTIFFS' ACTION

We turn now to analyze the events surrounding the processing of this claim to determine if plaintiffs' Amended Complaint meets the relation back standard of the federal rules. For the reasons set forth below, the Court finds that plaintiffs' Amended Complaint does relate back to the date of the original Complaint, and denies the Moving Codefendants Motion to Dismiss.

The November 15, 1990 search of plaintiffs' home provides the factual nexus for both the original and amended complaint and clearly meets the same "conduct, transaction, or occurrence" requirement of Rule 15. We turn now to the first prong of the statutory test: whether a proposed defendant has received sufficient notice of an action to avoid prejudice to the party's defense on the merits.

In *Ayala Serrano v. Collazo Torres,* 650 F.Supp. at 726, we summarized the standard used in assessing the sufficiency of notice:

A proposed defendant is considered to have received sufficient notice of an action when he or she shares "an identity

of interests" with the previously named defendants. "The identity of interests concept, a judicial gloss on Rule 15(c)(1), provides that the institution of the action serves as constructive notice of the action to the parties added after the limitations period expired, when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced." *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 103 (1st Cir.1979). *See also* 6 Wright & Miller, Federal Practice and Procedure, sect. 1499 at 516–522 (1971). [footnote omitted] Thus, where the proposed party's interests are sufficiently aligned with those of the original defendant, the latter is presumed to give notice of the suit to the former.

Such a presumption of notice is appropriate where, as here, the proposed defendant is an employee whose immediate superiors and colleagues were named and served as defendants in the initial action. *Bell v. United States Forest Service*, 385 F.Supp. 1135 (N.D.Calif.1974).

In the appeal from this case, the First Circuit applied the foregoing test and found an "identity of interest" to exist between the Administrator of Corrections of the Commonwealth of Puerto Rico, the Superintendent of the State Penitentiary at Rio Piedras and Lebron, the prison officer on duty when plaintiff Ayala was assaulted. *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d at 12–13. Lebron's presence at the incident, the fact that his superiors had been sued, the fact the Ayala was the subject of special protective measures, and Lebron's continued employment at the prison where Ayala remained as an inmate were factors that contributed to the the Court's conclusion that "it is entirely reasonable to assume that Lebron was notified or knew of the lawsuit commenced by Ayala as a result of the assault." *Id.* 909 F.2d at 13.

Applying this analysis to the present case, we note the presence of the same factors. First, all of the Moving Codefendants were present during the search of plaintiffs' home. Second, an action was filed against the officers' superiors on November 13, 1991. Third, the officers did not leave the police force and remained on active duty. Finally, these officers participated in an administrative investigation of the incident conducted by Puerto Rico Police Department. As part of this investigation the officers provided sworn statements before an official examiner of the Police Department attesting to their version of the events. The officers were advised of their constitutional rights to remain silent and to the assistance of an attorney. They were also informed that anything they said could be used against them or in their favor in any administrative action that arose out of the investigation. (Plaintiffs' Exhibit # 2, Opposition to the Motion to Dismiss). Finally, on the front page of the administrative report issued November 27, 1991, (Plaintiffs' exhibit # 2, Opposition to the Motion to Dismiss), it is clearly stated that "los querellantes se proponen radicar una demanda civil contra el Estado por los danos sufridos," ("the claimants are contemplating filing a civil action against the Commonwealth for the damages suffered" [translation ours] ). The Moving Codefendants do not argue, nor its necessary to assume, that they never saw copies of this report. Indeed, this same report establishes that four of the officers involved in the incident violated internal police procedures. It is inconceivable that the sum of information constituted by these various parts did not provide the Moving Codefendants with notice of the institution of a civil action stemming from the incident.

Furthermore, each influential factor mentioned above occurred within the time period prescribed by amended Rule 15(c)(3). The Police Department's administrative report was issued on November 27, 1991, just two weeks after the original Complaint was filed. The investigative examinations in which the officers provided sworn statements all took place in May and June of 1991. When the 120 day statutory period expired, roughly in early March, 1992, plaintiffs had already notified the Original

Codefendants with a First Set of Interrogatories and First Request for Production of Documents and on March 13, 1992, the Court had ordered defendants to respond within two weeks. In other words, during the relevant period an administrative investigation was initiated and completed, a civil action was commenced, and discovery in that action was underway. During all this time, the Moving Codefendants were members of the police force on active duty. Thus, the Court finds that notice was received within the time limits set by 15(c)(3).

Moreover, the proposed codefendants have failed to make any showing of prejudice in maintaining a defense due to the purported lack of notice. They do not allege unavailability of crucial witnesses, destruction of evidence, or personal inconvenience. *See e.g., Ayala Serrano v. Collazo Torres,* 650 F.Supp. at 727. Additionally, both the Original Codefendants and the Moving Codefendants are represented by the Federal Litigation Division of the Commonwealth Department of Justice. The Moving Codefendants' attorneys have therefore already been participating in the discovery process and otherwise preparing for trial. Under these circumstances, the Court fails to perceive any prejudice to the Moving Codefendants' defense caused by the delay and thus finds the notice requirement to be satisfied.

## V. THE MOVING CODEFENDANTS KNEW OR SHOULD HAVE KNOWN THEY WERE PROPER DEFENDANTS TO THE ACTION

■ The Court also finds that the second prong of the relation back test is satisfied because the Moving Defendants knew or should have known that they were proper parties to the action within the period provided for service of process by Rule 4(j).

Confronting this very issue in *Ayala Serrano v. Collazo Torres,* 650 F.Supp. at 727, this Court wrote:

Lebron was the only prison guard present during the assault and battery, and he was called upon to give a statement and participate in the investigation conducted by prison authorities. Given his direct and crucial role in the incident, we do not see how Lebron could remain unaware of his potential liability as a defendant.

*Id.,* at 727. In *Hernandez Jimenez v. Calero Toledo,* 604 F.2d at 103, the First Circuit provided additional guidance in determining whether a proposed defendant knew or should have known that he was a proper party to the action. In that case, the court stated: "Based on the facts of this case, appellees could very well have believed that they were not named as parties in the original complaint for tactical reasons or because appellant lacked evidence of their alleged participation in the conspiracy when he filed the complaint." *Id.,* at 103. *See also, Torres Ramirez v. Bermudez Garcia,* 898 F.2d 224, 229 (1st Cir.1990) ("[proposed defendant] might well have thought that he was not named in the action 'for tactical reasons or because [plaintiff] lacked evidence . . . when he filed the complaint.'" (citing *Hernandez Jimenez* )).

In the present case, as with Lebron in *Ayala Serrano,* the Moving Codefendants were present during the alleged unconstitutional search. Like Lebron, they participated in an administrative investigation stemming from the incident. Written notice of the possibility that plaintiffs might bring a civil action figured prominently on the front page of the investigative report issued on November 27, 1992.

Nor have the Moving Codefendants alleged that they believed they had not been named in the original complaint for tactical reasons or because evidence against them was lacking. Even if such an allegation had been made, the fact that plaintiffs included John Doe defendants in their original Complaint vitiates the argument that officers present during the search were unnamed for tactical reasons or for lack of evidence. To the contrary, the naming of John Doe defendants clearly suggests that plaintiffs intended to sue everyone involved in the incident even if their identities remained unknown when the original Complaint was filed. The fact that plaintiffs designate John Doe defendants in the origi-

nal Complaint also defeats the argument that the Moving Codefendants were unnamed due to lack of evidence pointing to their involvement. It is crucial to note that plaintiffs did not lack evidence implicating parties other than the original defendants. Plaintiffs were well aware that several other officers were involved in the search. As in *Ayala Serrano*, plaintiffs alleged "specific act[s], at a designated time and place," such that the Moving Codefendants would had to have known that they were the individuals referred to in the Complaint. *Ayala Serrano v. Collazo Torres*, 650 F.Supp. at 728. What plaintiffs lacked, however, was the evidence necessary to identify these officers. Thus, where a plaintiff lacks evidence, not of a proposed defendant's involvement but of his identity, the plaintiff should not fail this prong of the relation back test due solely to the proposed party's assertion that he believed he was not named in the action for lack of evidence. Based on the specificity of the allegations contained in the original Complaint, the naming of John Doe defendants, the Moving Codefendants' presence during the incident, their participation in the resulting administrative investigation, and the identity of interests between the police officials named in the original Complaint and the Moving Codefendants, the Court finds that, within the period prescribed by 15(c)(3), the Moving Codefendants knew or should of known of their potential liability as defendants.

Thus we find that the proposed codefendants were sufficiently apprised of plaintiffs' action and of their potential liability as defendants to satisfy the relation back provisions of Rule 15(c)(3).

## CONCLUSION

Wherefore, the Moving Codefendants' Motion to Dismiss is hereby DENIED.[4]

---

4. The Motion to Dismiss as to codefendants Nancy Burgos, Benjamin Charriez and Jorge Maldonado has already been denied by this Court. *See*, Order, dated November 30, 1992, docket # 74.