**Jerry L. WORLDS, Plaintiff,**

v.

**THERMAL INDUSTRIES, INC. and Michael Law, Defendants.**

Civil Action No. 92–40166–NMG.

United States District Court,
D. Massachusetts.

June 13, 1996.

Jerry L. Worlds, Worcester, MA, pro se.

Cynthia H.N. Post, John C. Wyman, Timothy P. Cox, Roche, Carens & DeGiacomo, Boston, MA, for Michael Law Thermal Industries, Inc.

Cynthia H.N. Post, John C. Wyman, Roche, Carens & DeGiacomo, Boston, MA, for Joanne Marie Taparauskas Patrie.

## MEMORANDUM AND ORDER

GORTON, District Judge.

*Pro se* plaintiff, Jerry Worlds, filed this action against Thermal Industries, Inc. ("Thermal"), his former employer, and Michael Law ("Law"), his former supervisor at Thermal, for termination of his employment on the basis of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1). Pending before this Court are: 1) a motion for summary judgment filed by plaintiff on August 23, 1994, and 2) a motion for summary judgment filed by defendants on October 14, 1994. The motions were referred to Magistrate Judge Swartwood for Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(B), and on March 19, 1996, he issued a Report and Recommendation ("R & R") in which he recommended that this Court deny both motions. Both parties subsequently filed with this Court objections to the denials of their respective motions.

Upon consideration of the R & R, the parties' objections and briefs filed in connection therewith and the parties' original filings in connection with the cross-motions, this Court concludes that summary judgment in favor of defendants should be allowed and therefore declines to adopt the contrary recommendation of the Magistrate Judge in that regard.

## I. STANDARD OF REVIEW

In considering cross-motions for summary judgment, this Court rules on each motion independently and decides in each instance whether the moving party has established, in accordance with Fed.R.Civ.P. 56, that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. *See Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). This Court must view the facts and any reasonable inferences drawn from them in a light most favorable to the non-moving party. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993), *cert. denied,* 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993).

 The moving party bears the burden of showing that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce,* 904 F.2d 740, 742 (1st Cir.1990). If the movant does so, the burden then shifts to the non-moving party to establish affirmatively the existence of a genuine material issue of fact. *Id.* In deciding whether a factual dispute is genuine, this Court determines whether "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On issues as to which the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut a motion for summary judgment. *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). In an employment discrimination case such as the instant case, summary judgment may be appropriate where the nonmoving party relies "upon conclusory allegations, improbable inferences, and unsupported speculation" as to any essential element of his claim. *Byrd v. Ronayne,* 61 F.3d 1026, 1030 (1st Cir.1995).

 Because plaintiff is proceeding *pro se,* the Court is required to interpret his Complaint liberally. *Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8, 12 (1st Cir.1990).

## II. FACTUAL BACKGROUND

Plaintiff, an African–American male, was employed as a warehouseman at the Worcester, Massachusetts facility of defendant, Thermal, between September, 1987 and May, 1990. Plaintiff was under the supervision of defendant, Law, who managed that facility.

In March, 1990, plaintiff claims that he noticed a change in Law's behavior towards him. For example, plaintiff alleges that Law "forced" his way into plaintiff's office without his knowledge. Complaint at ¶ 1. On another occasion, plaintiff refused to clean up the warehouse after maintenance workers had been there and Law allegedly told him that he had better find a new profession. Plaintiff's Deposition at 119–120.

Plaintiff complained to Art Poland, Vice President of Thermal, that he was being treated unjustly by Law because he was black. Mr. Poland told plaintiff that he would discuss the matter with Law.

On May 15, 1990, several weeks after Mr. Poland visited Thermal's Worcester facility, Law asked plaintiff to think about resigning "or else." Complaint at ¶ 2. Three days later, on May 18, plaintiff agreed to resign if Law would treat his resignation as a layoff so that plaintiff could qualify for unemployment compensation. At the time, Law allegedly made no mention of poor job performance by plaintiff. Pursuant to an agreement that plaintiff and Law executed, plaintiff's resignation was to have become effective one week later.

Also on May 18, plaintiff wrote a "grievance" letter to David Weis, Thermal's President, and to Mr. Poland complaining about Law's behavior toward the plaintiff. Neither that letter nor a subsequent letter sent on May 19, 1990, made any reference to racial animus or racial remarks made by Law or any other Thermal employee. On May 23, 1990, Mr. Weis called Law to speak with him about plaintiff's letter and later that day, Law terminated plaintiff's employment.

In support of his allegation that Law's actions were motivated by racial animus, plaintiff alleges that the following incidents occurred during his employment at Thermal:

1. A co-worker remarked that "she would not let her daughter marry a nigger." Complaint at ¶ 5.

2. The same co-worker stated "that on her last job she had to work with nigger welfare women ... and did not like working with Black's [sic]." *Id.*

3. Other employees told jokes about Jewish people and about "the Chinese, the Black guy, the Irishman" in plaintiff's

presence. Plaintiff's Deposition at 95–96, 102.

Plaintiff alleges that Law was present once or twice when those racial comments were made and that he "kind of laughed" on one of those occasions. Plaintiff's Deposition at 97–98. Plaintiff admits that he never heard Law tell any racial jokes but claims that on May 18, 1990, three days after Law asked plaintiff to resign, Law allegedly told him that his brother could not get a job with the Haverhill, Massachusetts fire department "because 3 Black's [sic] and 2 Hispanic's [sic] would always come along." Complaint at ¶ 6; Plaintiff's Deposition at 102.

Plaintiff further alleges that he was subject to other incidents that he considers to have been racially-driven. For example, on two or three occasions, plaintiff had to unload a truck by himself and none of the other workers, who were all white, would help him. Plaintiff's Deposition at 100–101, 189. Plaintiff claims that there was "fluctuation" in his job duties and "confusion" about the hours that he was supposed to work, both of which he attributes to racial prejudice. *Id.* at 103–106. Plaintiff further alleges that Law and others made up false stories about him and that he was not given a pay raise when all the other employees were. *Id.* at 263, 266. Plaintiff admits, however, that he was terminated, in part, for reasons other than his race. Complaint at 1; Plaintiff's Deposition at 107, 133. Specifically, plaintiff was one of a number of employees within the company who filed a complaint about a co-worker who happened to be Law's girlfriend. She was eventually terminated. Plaintiff's Deposition at 108–110. Plaintiff believes that his role in that incident may have contributed to his discharge from the company. *Id.* at 133.

Plaintiff filed complaints with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") alleging that his termination on May 23, 1990 was the result of race discrimination. On or about September 11, 1992, the EEOC determined that poor job performance was the cause of termination and found no violation of the federal anti-discrimination statute. On September 16, 1992, the MCAD similarly found that plaintiff lacked probable cause to pursue his race discrimination claim and dismissed his complaint. Plaintiff did not pursue his right to appeal the MCAD decision but, because his sole remaining option to remedy the adverse EEOC decision rested with this Court, he filed the present Complaint alleging that he "was continuously subjected to racial epithets and harassment" and that he "was terminated solely because of racial prejudice, and other reasons." Complaint at 1.

## III. DISCUSSION

■ Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer to discharge an employee on the basis of his or her race. 42 U.S.C. § 2000e–2(a)(1). In a disparate treatment case such as this, plaintiff bears the ultimate burden of proving that he was the victim of intentional discrimination. *Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir.1995). When, as here, the plaintiff produces no direct evidence of race discrimination, this Court proceeds under the three stage, burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). That framework is designed to allocate burdens of production and order the presentation of evidence so as "progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1095 n. 8, 67 L.Ed.2d 207 (1981).

### A. *Prima Facie Case*

■ At the first stage, the plaintiff has the burden of establishing a *prima facie* case showing that 1) he was a member of a protected class, 2) he possessed the necessary qualifications for, and adequately performed, his job, 3) he was nevertheless dismissed, and 4) his employer sought someone of roughly equivalent qualifications to perform substantially the same work. *Byrd*, 61 F.3d at 1031.

The plaintiff in this case has established the first and third elements of the *prima facie* case, that is, that he is a member of a protected class and that he was terminated.

With respect to the second element, plaintiff must show that he met his employer's legitimate job performance expectations. Plaintiff has submitted a letter from a former co-worker at Thermal, Mark Ostrowski, in which Mr. Ostrowski states that plaintiff was a "hard working, honest and responsible individual, one who surly [sic]·would be an asset to any company or organization." Letter from Ostrowski to EEOC dated April 22, 1992. Defendants object to the Court's consideration of that letter on the grounds that the letter was not verified and constitutes hearsay. At this first stage of the three-stage *McDonnell Douglas* analysis, however, "[t]he required prima facie showing is not especially burdensome", *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir. 1995), and this Court therefore credits the letter and assumes that plaintiff has established the second element of the *prima facie* case.

With respect to the fourth element, plaintiff must present credible evidence that Thermal sought persons not within his protected class for the same position after plaintiff's termination. Plaintiff claims that Law's brother was hired by Thermal after his discharge. Plaintiff's (Second) Motion for Summary Judgment and Objections to the R & R filed April 2, 1996 at ¶ 3. Plaintiff has not, however, submitted any evidence whatsoever to support that claim. Rather, plaintiff claims that the records of Thermal and the Internal Revenue Service "will show that Mr. Law and his brother worked at the same address" in Worcester after plaintiff's discharge. *Id.* Mere allegations, without more, are insufficient to establish a *prima facie* case of race discrimination. As the First Circuit Court of Appeals has warned, "a mere promise to produce admissi-

ble evidence at trial does not suffice to thwart the summary judgment ax." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir.1990).[1]

Based upon that deficiency alone, plaintiff's claim of race discrimination fails. For the sake of completeness, however, this Court addresses the second and third stages of the burden-shifting framework.

## B. *Defendants' Burden of Production*

If plaintiff had successfully established a *prima facie* case of discrimination, a presumption would have arisen that the employer unlawfully discriminated against the plaintiff. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Udo,* 54 F.3d at 12. That presumption would place upon the defendants the burden of producing sufficient competent evidence which, if taken as true, would permit a rational factfinder to conclude that there was a legitimate, non-discriminatory reason for the plaintiff's termination. *Hicks,* 509 U.S. at 506–7, 113 S.Ct. at 2746–47. If defendants could successfully meet that burden, the legal presumption of intentional discrimination generated by the *prima facie* case would drop out of the litigation. *Id.*

In this case, the defendants have presented evidence of poor job performance by plaintiff. For example, defendants claim that plaintiff did not promptly fill customers' orders and that as a result, Thermal lost a major client. Defendants further allege that plaintiff refused to perform work that Thermal considered to be part of his responsibilities, failed to complete paperwork, often sat idle, took unauthorized time off, failed to

---

1. The United States Supreme Court recently held that a plaintiff in an age discrimination case need not show that he was replaced by a person outside of his protected class in order to establish a *prima facie* case of discrimination. *See O'Connor v. Consolidated Coin Caterers Corporation,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Although the *O'Connor* analysis was extended by the Seventh Circuit Court of Appeals to the race discrimination context, *see Carson v. Bethlehem Steel Corp.,* 82 F.3d 157 (7th Cir. 1996), the First Circuit Court of Appeals has yet to apply *O'Connor* in any context. In any event,

the plaintiff in this case has submitted no evidence that his employer sought to replace him after his termination. Whether he was replaced by a member of, or someone outside of, his protected class is thus irrelevant. Furthermore, the Supreme Court has recognized that in order to establish a *prima facie* case of unlawful discrimination, plaintiff must present evidence adequate to create an inference that an employment decision was based upon an illegal discriminatory criterion. *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310. Plaintiff simply has not done so here.

keep his work area neat, and failed to cooperate with requests for improvement by Law. Law Affidavit at ¶¶ 5–11.

Based upon evidence offered by defendants, this Court concludes that defendants would have met their burden of production at this second stage of the analysis and would therefore have forced consideration of the final stage of the inquiry.

### C. Plaintiff's Evidence of Pretext

At the third stage of the analysis, the plaintiff, who at all times retains the ultimate burden of persuasion, must proffer sufficient credible and admissible evidence to prove, by a preponderance of the evidence, each essential element of the *prima facie* case and that the employer's proffered justification for the challenged employment action was merely a pretext for impermissible race discrimination. *Woodman,* 51 F.3d at 1092. At the summary judgment stage, the plaintiff thus bears the burden of providing adequate evidence to enable a rational factfinder to infer that the employer's decision was motivated by race animus. *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1117–18 (1st Cir.1993).

Plaintiff cannot meet this burden merely by casting doubt upon the defendants' articulated reasons for dismissal. *Dea v. Look,* 810 F.2d 12, 15 (1st Cir.1987). Rather, plaintiff must go beyond the pleadings and set forth specific, definite facts to rebut the defendants' justification and show affirmatively that the reason given by defendants is a sham intended to cover up the defendants' real discriminatory motive. *Mesnick,* 950 F.2d at 824. This Court is constrained to examine any proffered evidence of discrimination not in isolation, "but as part of an aggregate package of proof offered by the plaintiff." *Id.*

Upon careful review of the entire record and, in particular, the numerous submissions by plaintiff (many of which were not verified, sworn or otherwise certified as required under Fed.R.Civ.P. 56(e) but which were nonetheless reviewed by this Court out of deference to plaintiff's *pro se* status), this Court concludes that plaintiff has failed to present sufficient credible evidence to support his claim that he was the victim of discriminatory animus. Plaintiff refers to racial jokes and comments that were either made in his presence or that he overheard, as well as to several instances when he felt he was being harassed because of his race, in order to support an inference that defendants' decision to terminate him was motivated by intentional race discrimination. Plaintiff has failed, however, to submit credible evidence that would sufficiently connect those occasional and isolated instances with an alleged invidious motive on the part of the company or his supervisor, Law, to terminate his employment on the basis of his race. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10 (1st Cir.1990).

Furthermore, plaintiff's own deposition testimony indicates that his claims of racial bias are based upon speculation and conjecture, not upon facts. For example, when asked what he meant when he stated that he was terminated because of racial prejudice, plaintiff responded "Well, racial prejudice— there again, it all deals with the documentation of the great confusion about your hours that you're suppose to work, you're supposed to do this, you're supposed to do that." Plaintiff's Deposition at 106. When asked why he thought Law fired him, plaintiff answered that it was in part retaliation because plaintiff had helped get Law's former girlfriend fired from the company and in part because Law "[j]ust plain old didn't like me I guess I would say." *Id.* at 133.

Throughout plaintiff's testimony, he expressed a belief that race was at the root of many of the alleged incidents and harassment because he was the only African–American worker at the company. *Id.* at 101, 103–105, 109–110, 188–189, 263–266. Mere allegations of race discrimination, without more, are insufficient to create an issue of fact as to pretext or discriminatory animus. At best, plaintiff has asserted that he was treated unfairly during the course of his employment and that defendant Law disliked him. This Court concludes that those assertions alone are insufficient to enable a rational factfinder to conclude that intentional

race-based discrimination was a determinative factor in plaintiff's discharge.

## IV. CONCLUSION

It is a well-established rule that, in the end, summary judgment shall be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). While this Court is mindful of its duty to construe liberally the pleadings of a *pro se* plaintiff, it cannot turn a blind eye to the clear mandate of procedural rules. Defendants' motion for summary judgment will, therefore, be ALLOWED and plaintiff's motion for summary judgment will be DENIED.

### ORDER

For the foregoing reasons,

1. Plaintiff's motion for summary judgment is DENIED, and

2. Defendants' motion for summary judgment is ALLOWED.

So Ordered.